[Civ. No. 19148.   First Dist., Div. One.   Jan. 31, 1961.]

DOCKY JOSEPH NEAL, Plaintiff and Appellant, v. STATE FARM INSURANCE COMPANIES et al., Defendants and Appellants.

Harry D. Miller, Marvin B. Starr, Warren B. Wilson and Purchio & Fairwell for Plaintiff and Appellant.

McFarland & Ferdon and John P. · McFarland for Defendants and Appellants.

TOBRINER, J.—While we must resolve every ambiguity against an employer insurance company which drafted a contract of employment, or so-called "contract of adhesion," for engagement of insurance salesmen, we cannot uphold the salesman's claim for additional compensation here. We can find neither an ambiguity in the contract nor a basis for the claim.

Appellant and respondent Neal (hereinafter called appellant) and appellants and respondents State Farm Insurance Companies on behalf of the other named appellants and respondents (hereinafter called respondents) object to a decision which interprets the terms of an agency agreement between the parties. Appellant appeals from that portion of the judgment which denies him claimed compensation for six months of servicing policyholders; respondents appeal from the part which awards appellant a sum attributable to serv- ices rendered by him for a full month even though he worked only sixteen thirty-firsts of the month.

The case presents two issues, both involving the proper construction of the contract. The pertinent paragraphs read as follows: "2. For services rendered in any month while this Agreement is in force, in reporting, investigating and handling claims and otherwise servicing policyholders, the Local Agent shall be paid an amount equal to Ten Percent (10%) of the net premium collections, as hereinafter defined, received and recorded by the Company during the sixth preceding month on policies credited to the Local Agent during the month for which such payment is computed irrespective of whether such policies were secured by the Local Agent. Net premium collections are defined to be gross premium collections, less Selling Expense, if any, and less dividends paid or credited to policyholders. . . . 4. Upon termination of this Agreement by death or otherwise as provided in Section III A, any unpaid amounts

for securing new business under Section I hereof, shall be paid as soon as ascertainable. Payments for the agents services under Section 2 hereof for the particular month of termination by death or otherwise shall be prorated and paid as soon as ascertainable and shall constitute the final payment due under this Schedule for such services.''

Appellant insists that under paragraph 2 he is entitled to payments for servicing policyholders for the six months immediately preceding the termination of the contract because State Farm Insurance Companies, hereinafter called ''the company,'' in fact operates on a deferred payment system. Respondents deny any obligation to pay appellant for those six months and claim that the phrase ''sixth preceding month'' refers only to the company's formula for determining compensation currently due. The second issue involves paragraph 4: whether appellant should be paid for the entire month of termination or only the portion actually employed.

Appellant's testimony set forth his version of his employment and the arrangement for compensation for servicing policies. He commenced working as a local agent in January 1953. The company representative who recruited him, Mr. Hicks, told him that he ''would be paid a portion of the membership fee'' and that after he had been with the company six months he ''would then draw a service fee of ten per cent of my premium volume for the preceding six months.'' Mr. Hicks did not state whether or not he considered that the company paid service fee payments currently, but Mr. Pierce, the district manager, indicated that, because the company would be behind six months on service fee payments, appellant would receive a portion of another agent's service fees until his own started. He received 100 per cent of the other agent's fees in the first month; 75 per cent the second and third; 50 per cent the fourth, fifth and sixth, and 25 per cent ''permanently'' thereafter. The ''permanent'' 25 per cent assignment became appellant's business. On August 16, 1956, respondents wrote to appellant terminating the agreement. Appellant did not receive any payment for service fees for the period from February 16th to August 16th.

While the record contains controverted interpretations of the contract by respondents' district manager Pierce and executive vice president Tompkins, we do not set out this testimony. Oral construction and interpretation of the contract is unavailing if the contract itself is clear and unambiguous. (*Gero* v. *Richey* (1918), 38 Cal.App. 21 [175 P. 91].)

The trial court found that such provisions were "plain, precise and unambiguous and not subject to questions of construction or interpretation. . . ." Since, as we shall point out, we believe this finding entirely proper, the oral testimony is immaterial.

As to the basic issue, the court found after trial that "under and pursuant to Section 2 of Form A 541 the plaintiff was paid currently during any month for services rendered by him during that month and that the payments during that month were merely computed on the basis of 10% of net premium collections as therein defined, received and recorded by the company during the sixth preceding month on policies credited to the plaintiff during the month for which the payment was computed"; but that appellant "is entitled to service fees for the entire month of August without pro-ration. . . ." For the reasons hereinafter stated we believe the court properly denied appellant's claim for the additional six months' commissions but that it erred in refusing to prorate the last month's commissions. We consider each of these propositions separately.

As to the first, any ambiguities in the language of the contract must be interpreted against the company. ██ Commentators have characterized the type of agreement before us as a "contract of adhesion." The term signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it. (Kessler, *Contracts of Adhesion* (1943), 43 Columb. L. Rev., p. 629.) The designation "contract of adhesion" was introduced into the legal vocabulary by Patterson, *The Delivery of a Life-Insurance Policy* (1919), 33 Harv. L. Rev., pages 198, 222. Such an agreement does not issue from that freedom in bargaining and equality of bargaining which are the theoretical parents of the American law of contracts. Yet, today, the impact of these standardized contracts can hardly be exaggerated. "Most contracts which govern our daily lives are of a standardised character. We travel under standard terms, by rail, ship, aeroplane, or tramway. We make contracts for life or accident assurances under standardised conditions. We rent houses or rooms under similarly controlled terms; authors or broadcasters, whether dealing with public or private institutions, sign standard agreements; government departments regulate the conditions of purchases by standard conditions." (Friedmann, Law and Social Change in Contemporary Britain, p. 45.)

■ The rule that any ambiguities caused by the draftsman of the contract must be resolved against that party (*Narver* v. *California State Life Ins. Co.* (1930), 211 Cal. 176, 180-181 [294 P. 393, 71 A.L.R. 1374]; *Lagomarsino* v. *San Jose etc. Title Ins. Co.* (1960), 178 Cal.App.2d 455, 464 [3 Cal.Rptr. 80]), applies with peculiar force in the case of the contract of adhesion. Here the party of superior bargaining power not only prescribes the words of the instrument but the party who subscribes to it lacks the economic strength to change such language. Hence any ambiguity in the contract should be resolved against the draftsman, and questions of doubtful interpretation should be construed in favor of the subscribing party.

The instant contract, prepared, drafted, and printed by the employer, left no room for bargaining by the individuals seeking employment. As described by appellant the preliminaries to employment offered no chance for argument: "I was quite unhappy with the contract at the time and he [Mr. Pierce] told me that . . . it was either a take-it-or-leave-it proposition." This contract constituted a typical contract of adhesion.

■ A careful analysis of the contract, however, fails to reveal any ambiguity. Its language cannot be construed to support appellant's claim that the agreement entitled him "to be paid for services rendered in an amount totalling Ten Percent (10%) of his net monthly premium collections for the six months period immediately prior to his termination. . . ." The contract does not provide for payment of six months of premium collections, but fixes the compensation "[f]or services rendered in any month" the amount of net premium collections received by the company "during the *sixth preceding month* on policies credited to the Local Agent. . . ." (Emphasis added.) The sixth preceding month serves as the test for the amount to be paid the agent. It is a touchstone for one month's payment, not a cornerstone supporting a structure of payment on premiums collected during the salesman's last six months of employment.

The contract apparently framed two kinds of payment, each based upon different concepts: the first section provided for compensation in the form of "commissions" for effectuating the sale of insurance, and the second section, in the manner described above, established a formula of payment for servicing policies. The "services rendered in any month" earned compensation in the form of 10 per cent of the net premium

collections received by the company "during the sixth preceding month. . . ." Consequently appellant received compensation for each month during which he worked for the company and serviced policies; appellant during the period of 42½ months of employment received that number of checks. During the six months before he initially received service premiums from his own accounts, he received service premium payments on policies sold by his predecessor, at the rate of 100 per cent for the first month, 75 per cent for the next two, 50 per cent the fourth, fifth and sixth, and 25 per cent permanently thereafter.

The agent's work in servicing any policies during the first month of employment is compensated, accordingly by a percentage based upon collections received six months prior thereto upon policies previously procured by others. Since, obviously the agent will not have signed up many of his own policies during the first six months of employment, the company, under the contract, may assign him, as a basis for such compensation, policies procured by his predecessor. The company thus assigned appellant a decreasing monthly percentage of his predecessor's policies for the first six months, founded upon the apparent premise that, at the expiration of the six months' period, the policies which appellant procured himself would then serve as the basis for compensation.

The above analysis refutes appellant's argument that he suffered a forfeiture of the 10 per cent payments, upon policies procured by him, on net premiums collected during his last six months of employment. The contract did not provide for payment on net premiums for the last six months of employment but, instead, during the first six months of employment, provided for payment based upon policies "credited" him which were procured during the six months preceding his employment. In substance appellant obtained compensation during his first six months of employment premised upon the policies procured by his predecessor, just as appellant's successor presumably, during his first six months of employment, will be compensated upon the basis of policies procured by appellant. This substitution or exchange of the basic periods used for computing compensation must be distinguished from a forfeiture of compensation.

. The above analysis finds corroboration in three decisions which pass upon language identical to the instant contract. In the leading case, *State Farm Mut. Auto. Ins. Co.* v. *Hobbs* (Ky:, 1954), 268 S.W.2d 420, the appellate court reversed a

judgment awarding the agent six months' compensation, stating: "According to appellee's [the agent's] theory, the contract was retroactive, in that its effective date was six months before its execution, or it remained in effect until six months after the termination of the agency. Either alternative ignores the express provisions of the agreement. The supplementary agreement, by its express terms, was in effect for a period of 14½ months. Service fees were paid to appellee during this entire period of time. His construction of the agreement would require the payment of such fees for 20½ months. We are unable to concur in that construction. We think appellant has made all payments required under the contract. . . ." (P. 422.)

Similarly, in *Robertson* v. *State Farm Mut. Auto. Ins. Co.* (D.C. Ala., 1957), 156 F. Supp. 541, the court, when presented with the identical question as that which arises in the instant case, denied the plaintiff agent's claim for the six months' compensation, citing the Hobbs case.

The same issue again arose in *State Farm Mut. Auto. Ins. Co.* v. *West* (D.C. Ark., 1960), 181 F. Supp. 779; that court also denied relief to the agent, citing Hobbs and Robertson, concluding, "The provisions of the contract are not ambiguous, and it is the duty of the court to enforce the contract as written and agreed upon by the parties." (P. 782.)

Finally the decision of this court in *State Farm Mut. Auto Ins. Co.* v. *Dempster* (1959), 174 Cal.App.2d 418 [344 P.2d 821], which upheld the involved contract as against a different kind of attack, supports the above interpretation. It notes that service fees are not payable "for the time which intervened between the sixth preceding month and the date of termination" of employment. (P. 429.)

We conclude that the express language of the contract, devoid of ambiguity, defeats appellant's contentions.

We turn to the second issue set out *supra*: whether the trial court should have prorated the service compensation for the month of termination. Respondents dispute the trial court's judgment awarding appellant service fee commissions for the 15-day period following the termination of the agreement; rather, respondents argue, the termination payment actually made, covering the 16 days worked by appellant in that month, fulfilled the company's contractual obligation. Moreover, respondents deny the trial court's right to grant the relief to appellant because the complaint did not raise the issue.

The latter argument, that the court could not grant relief on the issue because it was not raised, must fail. Ap-

pellant pleaded the contract *in haec verba* in his petition for declaratory relief; additionally, he requested "whatever equitable relief and/or damages to which he is entitled under said agreement. . . ." In determining the amounts properly allowable to appellant the trial court could construe the entire contract. ██ As stated in *Maguire* v. *Hibernia S. & L. Soc.* (1944), 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062] : "A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a written instrument and requests that these rights and duties be adjudged by the court." (P. 728.)

██ Regarding the proration issue, the trial court found that appellant was "entitled to service fees for the entire month of August without pro-ration; . . . that plaintiff was paid by defendants the pro-rated sum of $176.50 for said month of August and is entitled to an additional $154.45, together with $30.58 accrued interest." (In the judgment the court mistakenly awarded appellant $176.50 plus interest.)

The contract provides that *"Payments* for the agents services under *Section 2* hereof [payments on service premiums] *for the particular month of termination* by death or otherwise *shall be prorated. . . ."* (Emphasis added.) Appellant argues that paragraph 2, set forth above, "required that Respondent pay to Appellant a full, non-prorated sixth preceding month"; that if the draftsman "intended to limit Paragraph 2 by the terms of Paragraph 4, he had failed to do so with any acceptable degree of clarity," and that, as we have stated, any ambiguity must be resolved against the company.

To buttress his argument appellant cites *Robertson* v. *State Farm Mutual Automobile Ins. Co., supra,* 156 F.Supp. 541. In this case the court awarded the salesman the whole of the 10 per cent of the net premium collections for the sixth month preceding the month during which he was terminated. The court concluded that paragraphs 2 and 4 are not reconcilable, saying: "Considering the language of paragraph 2, *supra,* which is clear and unambiguous, since plaintiff did render services in the month of August, he qualified for service compensation in an amount equal to 10% of the net premium collections in the preceding February. Perhaps the draftsman of paragraph 4 intended by the last sentence thereof and more particularly by the expression 'shall be prorated' to limit the obligation assumed by the defendant under paragraph 2. Construed most strongly against the de-

fendant such language is held to be insufficient to achieve the result for which defendant contends." (P. 543.)

We can find no conflict between the two paragraphs. Paragraph 2 contemplates the performance of services "rendered in any month"; the contract refers to a "month," not a part of it. Paragraph 4 accords with paragraph 2, providing that payments "for the particular month of termination . . . shall be *prorated*." (Emphasis added.) Construing the contract as a whole, as we must, we can only conclude that the contract specifically provides for proration in the circumstance of termination. We cannot sustain the award of payments for the last 15 days of August, a period subsequent to the termination of the contract.

Even though any ambiguities in a contract such as this must be resolved against respondents we find ambiguity neither in the provision upon which appellant predicates his claim for payment for the entire month of termination nor in the provision upon which he founds his claim for compensation for servicing policyholders during the six months preceding his termination.

We affirm the judgment, except that portion thereof which orders that "defendants pay to plaintiff the sum of One Hundred Seventy-six and 50/100 Dollars ($176.50) due to the plaintiff from defendants for services rendered in the month of August 1956, together with Thirty and 58/100 Dollars ($30.58) accrued interest thereon," and such portion of the judgment we reverse.

Bray, P. J., and Duniway, J., concurred.