[Civ. No. 678.   Fifth Dist.   Oct. 27, 1966.]

BURNERD C. HAMILTON, Plaintiff and Appellant, v. STOCKTON UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

Richard H. Perry for Plaintiff and Appellant.

Richard W. Dickenson, County Counsel, Robley E. George, Assistant County Counsel, and Walter J. McInnis, Deputy County Counsel, for Defendant and Respondent.

CONLEY, P. J.—Plaintiff appeals from the denial of a writ of mandate by which he sought to be restored to "permanent employment" in the "classified service" of Stockton Unified School District. He first went to work for the district in 1952, as a truck driver; the employment was authorized by the State Department of Education, Division of Vocational Rehabilitation; at that time Mr. Hamilton was a partially disabled person due to a shortening of one of his legs and the consequent tilting of his pelvis; however, he was passed as physically fit to work for the respondent at the time of employment; in the course of time, he became classified as a laborer. The employment by the school continued to the year 1960-61, or more explicitly, because of statutory leave, to the early part of the 1961-62 school year, after which he was not permitted to return to work; the respondent claims that he was never "discharged" but that his employment "terminated" (if that distinction is sound) with the expiration of his 100 days of statutory sick leave; appellant contends that his employment never ceased.

On or before July 1, 1960, respondent had categorized all uncertificated employees as the "classified service" (Ed. Code, § 13583) and had characterized all such persons, after

the expiration of the original six-month trial period, as "permanent" employees.

It is conceded by all parties that the employment was effected pursuant to the provisions of section 13583 of the Education Code as amended by the Legislature in the year 1959, and that said section then read as follows:

"The governing board shall provide an annual employment contract for employees a part of the classified service which shall extend to the close of the fiscal year; except that any governing board may make the contract renewable from year to year. The governing board may adopt a single contract which applies to all classified employees of the district and, if so adopted, shall be construed to be in compliance with this section; provided, the board issues each affected employee a copy of the contract or a handbook containing all of the provisions thereof.

"In lieu of the foregoing provisions the governing board may prescribe written rules and regulations, which shall be printed and made available to employees in the classified service, the public, and those concerned with the administration of this section, whereby such employees are designated as permanent employees of the district. Any employee designated as a permanent employee shall be subject to dismissal for cause, only, as determined by the governing board.

"This section shall apply only to districts which are required by law to classify as permanent employees those employees of the district who are employed in a position requiring certification qualifications and who otherwise meet the requirements of law for attaining the status of a permanent employee of the district."

A few days after July 1, 1960, the school board delivered to petitioner a "handbook," a copy of which is in evidence as petitioner's exhibit A. Similar pamphlets were given out to workers in the classified service in each following year. The parties differ sharply as to the nature and effect of these 'handbooks."

The viewpoints of the contesting parties are: (a) the district claims (and the court found) that the hiring was pursuant to the first paragraph of section 13583 of the Education Code (quoted *supra*), and that the handbook which was handed to Mr. Hamilton at the beginning of the 1960-61 school year, was in fact a "single contract" which applied "to all classified employees of the district"; but (b) the petitioner contends that the district was acting at the time under the

second paragraph of the section, that the handbook merely set forth the "written rules and regulations" adopted by the board in lieu of an annual contract relating to all of the members of the "classified service," and that, consequently, by the very terms of the code section, the appellant became a permanent employee who could be dismissed only for cause as determined by the board; the petitioner also contends, as a "second string to his bow," that even if the handbook is a contract, as described in the first paragraph of section 13583 of the Education Code, the document itself, by its own provisions, made appellant a permanent employee, and that he was entitled by its express terms to enjoy the status of permanent employee unless he had a formal hearing before the school board, at which charges against him were made, and that the school board never had occasion to discharge or suspend the petitioner.

The school board argues that, even if Mr. Hamilton became a permanent employee of the district by virtue of section 13583 of the Education Code, or the provisions of the handbook, nevertheless, there was a "termination" of his employment as distinguished from a "discharge" by the specific terms of the handbook (exhibit A, § 716 (2) (f)), and that by the failure of the board to deliver to the petitioner another handbook at the beginning of the 1961-62 school term, appellant was not rehired by the district. Furthermore, the district takes the unique position that the word "permanent" as applied in the handbook to employees does not really mean permanent but only "temporarily permanent," or in other words permanent only for the current school year.

We have reached the conclusion that no matter which paragraph of section 13583 of the Education Code is applicable, the school board is bound by the common, ordinary meaning of the word "permanent," that as Mr. Hamilton was never afforded the opportunity of a hearing, he has never ceased to be an employee of the school district, and that he is entitled to pay for the time that he has been excluded from work, modified by subtraction of what should legally be deducted in mitigation of damages.

PETITIONER WAS NOT FURNISHED A CONTRACT IN A FORM PURSUANT TO THE REQUIREMENT OF PARAGRAPH 1 OF SECTION 13583 OF THE EDUCATION CODE FOR THE 1960-61 SCHOOL YEAR.

As the trial court's essential findings depended upon its construction of what the district claims to be a contract,

namely, the handbook handed to petitioner at the beginning of the 1960-61 school year, this court has the right to make an independent construction of that document, irrespective of the lower court's conclusions relative thereto. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Stevenson* v. *County of San Diego,* 26 Cal.2d 842, 844 [161 P.2d 553]; *Trubowitch* v. *Riverbank Canning Co.,* 30 Cal.2d 335, 339 [182 P.2d 182]; *Fox* v. *Fox,* 42 Cal.2d 49, 52 [265 P.2d 881]; *Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 381 [267 P.2d 257]; 12 Cal.Jur. 2d, Contracts, § 119, pp. 324-327.)

The testimony with respect to the delivery of a copy of this handbook does not affect this conclusion, as contended by the respondent. ██ The first paragraph of section 13583 of the Education Code permitted the adoption by the board of "a single contract which applies to all classified employees of the district" and if the handbook were considered as being made and distributed pursuant to this authorization, it should be noted that the pamphlet completely omits many provisions which are ordinarily deemed necessary in a complete contractual arrangement: there is no classification of positions, no salary schedule, except by reference to a separate document, no specific job assignments, and no listing of statutory rights of employees in the classified service; as a matter of fact, the handbook constituted only one of a series of board enactments and statutes, which together made up the total contractual relationship; the handbook failed to comply with the requirements of the first paragraph of section 13583 of the Education Code, because vital contractual provisions were not included. The first paragraph of the Education Code section in effect at that time made it essential that if the board should adopt a single contract which "applies to all classified employees of the district," it would have to issue to "each affected employee *a copy of the contract or a handbook containing all of the provisions thereof.*" (Italics added.) And, in our opinion, it did not do so.

The foreword printed in the 1960-61 handbook states, "This handbook is intended to be a convenient source of information for classified personnel. It should be especially valuable to the new employee in helping him learn the essential facts about the history and organization of the school district. It provides all classified employees with the detailed rules and regulations governing their employment." This salutation complies more closely with the "in lieu" provisions of the second paragraph of the code section than with the first.

And the inclusion of a provision for a probationary period of six months, which was proper under the second paragraph of the code section but improper under the first (36 Ops.Cal. Atty.Gen.7) gives further support to this conclusion.

■ The foregoing analysis leads to our belief that the handbook does not constitute a contract in the form required by the first paragraph of the code section; it seems to us that it was issued rather to comply with the second paragraph of the code section which finally states in emphatic language ". . . such employees are designated as permanent employees of the district. Any employee designated as a permanent employee shall be subject to dismissal for cause, only, as determined by the governing board." Historically, this provision was the opening wedge in a move by the Legislature to give school employees in the classified service permanent status and a right to their jobs in the absence of a hearing and good cause for discharge, which reached final fruition in the 1965 session by the Legislature's amendment of section 13583 of the Education Code; the later amendment eliminated altogether the first paragraph of the section as it existed at the time of the 1960-61 employment of defendant, and gave to all school employees in the classified service a relatively permanent status.

If, as we have determined, the second paragraph of section 13583 controlled the relationship of the petitioner with the district, it is clear that he was subject to dismissal only for cause as determined by the governing board and that, consequently, he has been steadily employed, without receiving pay, in the interim.

His delay in seeking adjudication of his rights was held by the trial court in this proceeding not to constitute laches, and it will be unnecessary for us, therefore, to consider such a contention as a defense.

BUT EVEN IF THE HANDBOOK SHOULD BE CONSIDERED TO BE A CONTRACT, THIS DOCUMENT ITSELF CREATES AND APPROVES PERMANENT STATUS ON THE PART OF PETITIONER.

■ Under the viewpoint advocated by the school board, it is no better off as a litigant. For if the handbook should be considered a contract, as described in the first paragraph of section 13583 of the Education Code, it establishes by its own terms a system of permanency as to classified service employees; and the school board should not now be allowed to repudiate its adopted method.

The handbook for 1960-61, approved by the board as of July of 1960 and issued to classified service personnel, provides in

section 701 (2)(b): *"Permanent Employees.*Employees hired to fill authorized regular positions shall be classified as permanent employees after the first six months of their employment. They may be employed either on a full-time or part-time basis as to hours or days. They are entitled to all employee benefits authorized by the Board of Education or by the Education Code of the State of California. They shall be compensated in accordance with the Classified Salary Schedule." Section 701, subdivision 3, states: "All permanent classified employees shall be subject to dismissal only for cause."

Section 711 of the handbook states the grounds for suspensions and dismissals. In section 704, the handbook states (1) that the anniversary date for advancement of each employee is July 1, and (2) that an employee shall move up to the next step of his classification on July 1, provided he was in the employment of the district from February of the same year and was continuously employed from that time until July 1. Otherwise, he would not reach his anniversary date for advancement until the following July 1.

Section 705 of the handbook refers to the compensation plan, and subdivision 4 thereof provides: "All classified employees shall advance on the salary schedule one step each year until the maximum for the position has been reached. Exceptions to this rule must be approved by the Board of Education and in such cases the employees will be notified of the reasons therefor." The handbook states on page 7: "The powers and duties of a local board of education are clearly defined by the California Education Code. Operating within this framework, the local Board of Education establishes policies and determines rules and regulations which govern the school system."

Appellant thus contends that Stockton Unified School District, by board action established a "system of permanency" and that Hamilton's rights vested under that system and may not now be repudiated by the district.

In the opinion in *Flewelling* v. *Board of Trustees,* 178 Cal. App.2d 168, 174 [2 Cal.Rptr. 891], the court comments: "The failure of appellants [the board of trustees] to classify respondent as a permanent employee did not prevent him from obtaining that status. . . . 'by operation of the statutes'."

█ If the handbook was in fact a contract of employment, as permitted by the first paragraph of section 13583 of the Education Code, it was a "contract of adhesion," that is to say, an agreement not resulting from freedom of bargaining, but one which gave the employee only the opportunity "to

adhere to the contract or reject it." (*Neal* v. *State Farm Ins. Cos.*, 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781]; *Steven* v. *Fidelity & Casualty Co.*, 58 Cal.2d 862, 882 [27 Cal.Rptr. 172, 377 P.2d 284].) As stated in the *Neal* case, *supra*, a party hired under such a contract lacks the economic strength to secure a change in the language of the document by negotiation, and, therefore, any ambiguity in the instrument should be resolved against the draftsman, and any ambiguous provision should be construed in favor of the party adhering to the instrument.

Provisions of the Education Code which are applicable and concomitant after the trial period with every employment of a classified employee by a school district are the right to sick leave and the right to accumulate unused sick leave from year to year (Ed. Code, § 13651.1); the right, after one calendar year of service, to have leaves and other benefits transferred from one district to another, if agreeable to the new employer district (Ed. Code, § 13655); on school district reorganization, the power to continue in employment with the acquiring district for one year after reorganization with the same rights as if no reorganization had occurred (Ed. Code, § 13584); and in case of unification to remain in the employment of the unified school district for not less than one year (Ed. Code, § 13584.3). Appellant argues that the very existence of these rights contradicts any theory that an employee is subject to summary dismissal, without cause, at the end of a given school year.

Appellant also points out that there is no law authorizing compensation in cash for accumulated and unused sick leave; and he argues by way of illustration that if a classified employee, hired for five years, did not use 10 of the days allowed in each year, he would have a legal right to carry 50 days of sick leave into his sixth year, unless in the meantime he were dismissed for cause, but that under the trial court's ruling the failure of the board affirmatively to renew his contract on June 30 of the fifth year would prevent the operation of these provisions of the law.

Appellant also argues persuasively that the first paragraph of section 13583 of the Education Code provides for at least an annual contract for classified employees only as to "subjects within board jurisdiction," and the appellant interprets that to mean specific classification, days and hours of work, specific duties, salary, extension of permissive privileges, such as sick leave beyond the statutory requirement (Ed. Code, § 13651.1), bereavement leave (Ed. Code, § 13651.4), pregnancy leave

(Ed. Code, § 13651.3), vacations and similar leaves of absence (Ed. Code, § 13651); but that the "employment status" declared by the laws which determine rights beyond the fiscal year cannot be "abrogated by unilateral action or inaction" arbitrarily manifested on the part of the governing board on June 30th.

While the relationship between a classified employee and the district was based on contract (if the handbook constituted a contract), a legal status and "legal consequences" arose independently of the specific terms of the agreement itself (*Kacsur* v. *Board of Trustees*, 18 Cal.2d 586, 591 [116 P.2d 593]); the legal provisions concerning classified service were annexed to the contract at the time of the beginning of the employment and the employee did not have to be hired for any certain number of years before the vesting of his right to remain in employment during good behavior (*Titus* v. *Lawndale School Dist.*, 157 Cal.App.2d 822 [322 P.2d 56]; *Main* v. *Claremont Unified School Dist.*, 161 Cal.App.2d 189 [326 P.2d 573]); appellant was employed under a "contract of adhesion" for the 1960-61 year, and he thereby gained the statutory right to accumulate sick leave from year to year and to participate in all of the other statutory rights and benefits appertaining to his position; Stockton Unified School District had no power to deprive him of this status every June 30th, and immediately upon the employment for the year 1960-61, when the statutes of 1959 were operative, Hamilton gained a vested right to the benefits stated in the handbook, including a pension upon retirement.

The logical effect of the holding of the trial court in this case was that Stockton Unified School District had power to dismiss its entire classified staff each June 30, and to reemploy them each July 1 as new employees, and that, by this device, it could thereby prevent from fruition the various promises set out in the handbook; as a new employee each year, a classified employee could thus be held to the lowest salary step no matter what was the previous number of years of service; he could also be thus prevented from the right to retire with a pension since the last year of his employment would also be his first year of employment. While this observation is hypothetical and excessive from the standpoint of actual incidence, it nevertheless illustrates the fallacy of respondent's position. The several provisions of the handbook offer marked incentives to classified service personnel to work for the school district as a career, and to permit Stockton Unified School District to dis-

charge an employee, who wishes to enforce these promises, by a mere failure to issue an annual handbook, would allow the district to take unfair advantage of any employee.

▪ Furthermore, we fail to see a permissible distinction between the "discharge" of an employee and a "termination" of his services. And in our experience "permanent" does not mean "temporary" but "continuing, enduring, lasting, stable."

Reference is made by respondent to the recent case of *California School Emp. Assn.* v. *Willits Unified School Dist.*, 243 Cal.App.2d 776 [52 Cal.Rptr. 765], in which the District Court of Appeal of the First Appellate District held that under the particular record in that case, the employees there involved were not hired on a basis of permanency. The case is easily distinguishable from the instant proceeding; in the *Willits* case the employment contracts were unambiguous; they specifically provided that employment was for one year and that the employees were "regular" rather than permanent; the court in the *Willits* case also said that the characteristics of an "adhesion contract" attached only when the contracts of employment are ambiguous. In the instant case, the handbook, if it is to be considered a contract, is ambiguous; there is no provision that employment is for one year only, and the qualifying adjective "permanent" is applied to the employee in question throughout. The conclusion which we have reached depends upon the factors above mentioned, and the *Willits* case, *supra*, is not an applicable authority as to the questions involved here.

APPELLANT IS ENTITLED TO SALARY IN THE MEANTIME, WITH INTEREST, BUT LESS THE AMOUNTS EARNED BY HIM FROM OTHER EMPLOYMENT DURING THE INTERIM.

Appellant finally maintains that he is entitled to reinstatement and damages, because he was a permanent employee who could not be discharged without cause and without a hearing (*Lapp* v. *Superior Court*, 205 Cal.App.2d 56 [22 Cal.Rptr. 839]); it required board action to "hire or fire." Hamilton had no hearing and apparently there were no grounds for his dismissal for cause.

▪ He asks to have his salary restored with interest besides the right to his retirement and other benefits (see *Mass* v. *Board of Education*, 61 Cal.2d 612 [39 Cal.Rptr. 739, 394 P. 579]; *Titus* v. *Lawndale School Dist.*, 157 Cal.App.2d 822, *supra*, pp. 828-830). Under the holding in the *Mass* case, the defendant school district had the burden of proving mitigation

of damages as to certified employees, and, in the absence of such proof as to any period, the presumption would be that the employee was damaged in the sum which he would have received if he had performed the required duties in full. Under the evidence, Stockton Unified School District is entitled to mitigation of damages in the amount of $1,028.49, as shown by the evidence produced by it.

The judgment is reversed with directions to the trial court to issue a peremptory writ of mandate reinstating appellant, and granting him judgment in accordance with the views of the court expressed herein for the salary to which he is entitled, together with interest on each installment thereof, from the due date until the entry of judgment, minus a deduction from the money judgment of $1,028.49, the total of the sums established at the hearing in mitigation of damages, together with interest on each installment thereof at the rate of 7 percent per annum from the date of earning each of said installments to the date of judgment, with a reinstatement of his rights to retirement, leave and other rights of permanent employees in the classified service.

Stone, J., and McMurray, J. pro tem.,* concurred.

*Assigned by the Chairman of the Judicial Council.