[Civ. No. 49754. Second Dist., Div. Five. Mar. 27, 1978.]

JEROLD GODDARD, Plaintiff and Appellant, v.
SOUTH BAY UNION HIGH SCHOOL DISTRICT et al.,
Defendants and Respondents.

**COUNSEL**

Trygstad & Odell and Lawrence B. Trygstad for Plaintiff and Appellant.

John H. Larson, County Counsel, and Audrey Oliver, Deputy County Counsel, for Defendants and Respondents.

OPINION

STEPHENS, J.—Petitioner Jerold Goddard (hereinafter Petitioner) appeals from a judgment by the superior court denying his petition for a writ of mandate. Petitioner sought a writ directing respondents South Bay Union High School District (hereinafter District) and the Governing Board of the South Bay Union High School District (hereinafter Board) to compensate him for all salary lost as a result of the District's refusal to grant salary credit for courses taken at Southwestern University School of Law.

## FACTS

At the time this appeal was filed, Petitioner was a social studies teacher in the District, and had been so employed since 1967. He taught courses in government, American history and economics.

The respondent Board provides that teachers who take college or university courses which improve their teaching competence may receive credit for salary advancement on the salary schedule, subject to the requirement of Board regulations. In September 1971, Petitioner undertook a course of study at Southwestern University School of Law, and in January 1972, requested salary credit for the courses he was taking. This request was approved by Petitioner's department chairman and school principal.[1] In August 1972 after completion of 18 units of credit at Southwestern—Petitioner was formally advised by letter from the assistant superintendent in charge of personnel that coursework taken at Southwestern would not be accepted for salary credit. Petitioner was informed that Southwestern University does not meet the requirements

---

[1]Petitioner asserts in the petition that he also requested and received approval of his first semester courses in September 1971. Respondents claim, however, that there is no record of such a request.

Board regulation 4131.2 indicates that a request for advance approval of courses taken is not a *prerequisite* for salary credit. Rather, advance approval merely allows for salary increases, where warranted, to begin upon the first pay period after completion. "Credits earned without principal's permission shall not be counted for salary purposes until six pay periods have lapsed from the date of the course completion." (Board reg. 4131.2.)

It should also be noted that advance approval of coursework does not guarantee that salary credit will be given. Board regulation 4141.4 provides that "[i]n the administration of any part of this salary schedule, the decision of the Board shall be final." Assistant Superintendent Mileham declared that "The final granting of salary credit is done by the Board upon the recommendation of the Superintendent and Assistant Superintendent in Charge of Personnel."

of Board regulation[2] 4141.4, which states in part: "All units accepted for placement on the salary schedule must be from a *duly accredited college or university. In California, an accredited institution would be one accredited by Western Association of Schools and Colleges.* Teachers attending colleges or universities outside of California will receive credit for units taken in institutions accredited by associations equivalent to Western Association of Schools and Colleges." (Italics added.) It was stated that Southwestern was not accredited by the Western Association of Schools and Colleges (hereinafter W.A.S.C.);[3] therefore, units taken from Southwestern were considered unacceptable for salary purposes.

On November 1, 1972, Petitioner met directly with the Board to request salary credit for courses he had taken. He contended that although Southwestern was not accredited by W.A.S.C., it was nevertheless a duly accredited college of law. Furthermore, he noted that the Board had recently granted another teacher (Michael Gianinni) salary credit for attending law school courses; therefore, he urged that to deny petitioner salary credit would be discriminatory.[4] The Board rejected Petitioner's arguments and denied him salary credit because Southwestern University was not accredited by W.A.S.C.[5]

---

[2]The record contains numerous references to Board "Policy" 4141.4. District Superintendent James Riewer stated by deposition that Board "Policies" such as 4141.4 and 4132.2 are actually administrative regulations. Throughout this opinion we refer to these rules in their technical sense—as administrative regulations.

[3]Southwestern University School of Law is, however, accredited by the American Bar Association, which is the accrediting agency recognized by the United States government through the Department of Health, Education and Welfare. Southwestern is also accredited by the Committee of Bar Examiners of the State of California, and the Association of American Law Schools.

[4]Mr. Gianinni had attended three years of a four-year law school program at the time that regulation 4141.4 was passed in 1969. He had regularly received salary credit for courses taken each semester under the former policy, which imposed no accreditation requirements. After enactment of regulation 4141.4, Superintendent Riewer told Gianinni that no salary credit would be given for his last year of courses. The Board later reversed this decision, ruling that Gianinni should be exempted from operation of the new regulation because he had undertaken law school in detrimental reliance upon the old policy.

[5]The refusal was based upon the fact that Southwestern was not a W.A.S.C. accredited school. The Board minutes of November 1, 1972, states as follows: "It was moved by Mr. Hilby, seconded by Dr. Busby, that the request of Jerold Goddard to be allowed salary credit for units earned at *Southwestern University School of Law, a non-WASC accredited* institution, be denied. Motion unanimously carried." (Italics added.)

Mr. Hilby, who had moved for denial, stated in his declaration that "the Board found on November 1, 1972 as follows:

"1. Mr. Goddard had knowledge of [regulation] 4141.4 which was enacted two years

Petitioner sought a writ of mandate in the Los Angeles Superior Court, pursuant to Code of Civil Procedure, section 1085. The matter was heard on March 16, 1976, before Judge Norman R. Douds. At trial, respondents moved to introduce as evidence several declarations by Board members who had voted to enact 4141.4. These Board members unanimously stated that their intent in voting for regulation 4141.4 was to prohibit salary credit for courses taken at professional institutions such as law schools. Petitioner objected that the testimony of individual lawmakers was not admissible to prove what was intended at the time of enactment. The evidence, however, was admitted upon the parties' stipulations that only relevant and competent evidence within the declarations would be considered.

Also admitted into evidence was the declaration of Richard Mileham, assistant superintendent in charge of personnel.Mileham recounted the origins of 4141.4. He stated that the district's faculty association had been opposed to the continued granting of salary credit to Michael Gianinni, who was attending law school. Mileham stated that the association thought it improper to grant credit for courses taken in a school of law which would prepare the employee for a profession as a lawyer and not as a teacher. Mileham further stated that on August 6, 1969, he expressed the faculty association's views to the Board, and that after discussing the matter, the Board enacted Board regulation 4141.4.

Petitioner introduced evidence which dealt with the reasonableness of requiring W.A.S.C. accreditation as a means of preventing salary credit for law school courses. This included portions of the deposition of District Superintendent Riewer wherein he described W.A.S.C. accreditation of the entire institution rather than a reflection of its components: "It is my understanding that there is an umbrella nature of the W.A.S.C. accrediting process covering the entity of the university." Riewer said "[i]t is our contention that a law school at UCLA or USC is not accredited by W.A.S.C." Nevertheless, he subsequently did agree that under the current board policy "if Mr. Goddard had gone to UCLA [a W.A.S.C. accredited university] and had gone to their law school and had submitted the units, he would have as a matter of course gotten credit at the beginning of the next school year . . . ."

---

before he commenced law school courses;
"2. Southwestern University School of Law was not accredited by the Western Association of Schools and Colleges; and
"3. Therefore, those units earned by Mr. Goddard from the law school could not be used to advance him on the salary schedule of the school district."

The trial court—having concluded that regulation 4141.4 was validly enacted and applied—denied the writ of mandate.

CONTENTIONS

On appeal, Petitioner asserts that the writ of mandate to compel board action should have been granted below for the following reasons: (1) The Board's denial of Petitioner's salary credit was founded upon an erroneous construction of Board regulation 4141.4; hence, denial of salary credit constituted a breach of Petitioner's contract of employment, as well as a violation of the requirement that placement of teachers on salary schedules be uniform for those of like experience and training. (Ed. Code, § 45028—formerly § 13506); (2) If, as respondents assert, 4141.4 does exclude credit from *any* school not accredited by W.A.S.C., that regulation would be arbitrary and unreasonable as applied to Petitioner; it would therefore violate the above mentioned principle of uniformity and the equal protection requirements of the United States Constitution and California Constitution; (3) If 4141.4 is based upon the premise that teachers who go to professional schools such as law schools thereby intend to leave the teaching profession, the regulation would constitute an invalid conclusive presumption—violative of procedural due process.

We have concluded that the respondents improperly construed Board regulation 4141.4 so as to deny salary credit for courses taken from a duly accredited law school. We have therefore not addressed the constitutional issues raised by Petitioner.

DISCUSSION

■ At the outset, we recognize that one may appeal the judgment of the superior court denying a writ of mandate. (Code Civ. Proc., §§ 1110, 1064, 904.1; *Lompoc Federation of Teachers* v. *Lompoc Unified Sch. Dist.* (1976) 58 Cal.App.3d 701, 710 [130 Cal.Rptr. 70]; *Ross* v. *Municipal Court* (1975) 49 Cal.App.3d 575, 576 [122 Cal.Rptr. 807].)[6]

In the present case, the trial court concluded that the Board had validly applied regulation 4141.4 so as to disallow salary credit for law

[6]That a writ of mandate is a proper means by which to compel a school board to pay salary due a teacher is not contested. (*Caminetti* v. *Board of Trustees* (1934) 1 Cal.2d 354, 356 [34 P.2d 1021]; *Ross* v. *Board of Education* (1912) 18 Cal.App. 222, 225-226 [122 P. 967].)

courses taken at a fully accredited law school. ■ The construction of an administrative regulation and its application to a given set of facts are matters of law, and as the California Supreme Court has recently stated, "while an administrative agency's interpretation of its own regulation obviously deserves great weight [citations], the ultimate resolution of such legal questions rests with the courts." (*Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161]; see also *Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593].) ■ Where the facts essential to the determination of such a legal issue are not in conflict, the reviewing court is not bound by the trial court's resolution. (*Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112]; *Western Contracting Corp.* v. *State Board of Equalization* (1968) 265 Cal.App.2d 568, 575 [71 Cal.Rptr. 472].) In the present case, the facts which are material to this court's construction of regulation 4141.4 are not in dispute. We are therefore not bound by the trial court's determination regarding the proper interpretation of the regulation.

■ It has been held that the rules and regulations promulgated by a board of education are integral parts of a teacher's contract of employment. (*Frates* v. *Burnett* (1970) 9 Cal.App.3d 63, 69 [87 Cal.Rptr. 731]; *Fry* v. *Board of Education* (1941) 17 Cal.2d 753, 760 [112 P.2d 229].) ■ ■ In *Frates* the court held that (pp. 69-70): "An employment contract between a school district and an employee is in essence a contract of adhesion and therefore will be construed against the school district." Applying this principle, the court construed an ambiguous board regulation against the board. An adhesion contract is a contract in which the party with superior bargaining power permits the other party to adhere to the contract or reject it, but does not permit an opportunity to bargain over its terms. (*Neal* v. *State Farm Ins. Co.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781].) One who is hired under such a contract has no opportunity to bargain for a change in the language of the document; hence, any ambiguous provision should be resolved against the draftsman and in favor of the other party. (*Frates* v. *Burnett, supra,* 9 Cal.App.3d at p. 70; *Hamilton* v. *Stockton Unified Sch. Dist.* (1966) 245 Cal.App.2d 944, 952 [54 Cal.Rptr. 463].) The rule of resolving ambiguities against the drafter "does not serve as a mere tie breaker; it rests upon fundamental considerations of policy." (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 871 [27 Cal.Rptr. 172, 377 P.2d 284].)

██   Petitioner contends that regulation 4141.4, properly construed, requires that all courses taken for salary credit must be from schools that are "duly accredited." He urges that the regulation names W.A.S.C. accreditation as an example of acceptable accreditation, not as an absolute requirement. He asserts that Southwestern is clearly a duly accredited law school; therefore, the Board's refusal to grant salary credit for coursework at Southwestern was improper. In opposition or contrast, respondent urges that the regulation should be construed as an absolute requirement that units be taken from W.A.S.C. accredited schools. They assert that the purpose of this provision is to prohibit salary credit for courses taken at professional schools such as law schools. As detailed below, we have concluded that the regulation is ambiguous and, as such, should be construed against the party responsible for the ambiguity in accordance with the principles of construction of adhesion contracts.

Petitioner's construction of regulation 4141.4 is supported by the plainly restrictive language in the first sentence—"*must be* . . . duly accredited"—followed by the equivocal language in the second sentence: "In California, an accredited institution *would be one* accredited by [WASC]." (Italics added.) This difference in language suggests a difference in intent; it suggests that the board knew how to make W.A.S.C. accreditation a definite requirement but chose not to do so. The first sentence plainly suggests that the board is attempting to set a minimum standard of academic quality for the schools which teachers may attend and obtain salary credit. The designation of W.A.S.C. in the second sentence could easily be construed as an example given by the Board of the type of accreditation that would be acceptable. Since teachers usually attend liberal arts schools with a diversified curriculum—schools which would ordinarily seek W.A.S.C. accreditation—the W.A.S.C. example is significant. However, so interpreted, the regulation does not foreclose salary credit to teachers attending institutions of higher learning which by their nature would seek other types of accreditation.

Conversely, if one looks solely to the terms of the regulation, it would be possible to construe W.A.S.C. accreditation as a definite requirement. It is, however, the purported intent—an intent that respondents assert to be the very basis of the regulation—that renders such a construction dubious. The purported intent of the regulation—to prohibit salary credit for professional school courses—is not reasonably disclosed by the terms. Those terms neither state nor reasonably imply that courses from professional schools are unsatisfactory for salary credit purposes. This is

significant because one would reasonably expect that if the Board had sought to prohibit salary credit for professional school courses they could have easily done so in plain language. On the contrary, the Board chose to state that units taken "must be from a duly accredited school," which in California "would be one accredited by WASC." The Board added nothing to contradict the normal expectation that this rule is intended merely to prohibit salary credit from unaccredited schools. Nor is there evidence that the Board's unexpressed intent was communicated to the teachers at the time that the rule was promulgated.

Furthermore, the conclusion that the regulation should be construed in favor of Petitioner is buttressed by another accepted principle of construction. Where a statute is susceptible of more than one construction, the court should adopt that construction which leads to a reasonable result rather than to mischief or absurdity. (*Metropolitan Water Dist.* v. *Adams* (1948) 32 Cal.2d 620, 630-631 [197 P.2d 543]; *California State Disaster Council* v. *Workmen's Comp. App. Bd.* (1970) 11 Cal.App.3d 1083, 1087 [90 Cal.Rptr. 228]; *Ivens* v. *Simon* (1963) 212 Cal.App.2d 177, 181 [27 Cal.Rptr. 801]; *City of El Monte* v. *City of Industry* (1961) 188 Cal.App.2d 774, 782 [10 Cal.Rptr. 802]; *Kennard* v. *Rosenberg* (1954) 127 Cal.App.2d 340, 345 [273 P.2d 839].)

Respondent's construction of regulation 4141.4 as an absolute requirement of W.A.S.C. accreditation imposed for the purpose of eliminating salary credit for law school courses is unreasonable. This is made apparent by an examination of the nature of W.A.S.C. accreditation.[7] The accreditation granted by regional associations such as W.A.S.C. is an evaluation of an entire educational institution, not of its components. As the Encyclopedia of Education states: "These regional accrediting associations furnish what is called general or institutional accreditation,

---

[7]To aid the court in the interpretation of regulation 4141.4, this court has taken judicial note of basic facts relating to W.A.S.C. accreditation. These confirm the evidence given by Riewer. Sources consulted include Encyclopedia of Education, "Accreditation," page 57; American Bar Association, Law Schools & Bar Admission Requirements: A Review of Legal Education in the United States, Fall 1976, pages 5-8; National Center for Educational Statistics, Education Directory: Colleges and Universities, 1976-1977 (Gov. Printing Office) pages 17-51.

The trial court found that "There is no evidence to support Petitioner's contention that the Western Association of Schools and Colleges accredits any law school." The above mentioned sources, however, indisputably show that (1) W.A.S.C. does accredit law schools that seek accreditation and has thus far accredited two law schools which lacked ABA approval, but sought and obtained W.A.S.C. approval, and (2) W.A.S.C. accreditation is institutional in nature and covers all components of a university, including its professional schools.

which emphasizes the total strength and vitality of the college or university, but *gives no special accreditation to individual programs within the Institution.*" (Italics added. 1 Encyclopedia of Education, p. 57.) District Superintendent Riewer acknowledged this institutional character of W.A.S.C. accreditation when he stated in his deposition: "It is my understanding that there is an umbrella nature of the WASC accrediting process covering the entity of the university." Universities commonly contain numerous programs including, for example, business, education, engineering, law and many others. It follows that persons who attend universities which are accredited by W.A.S.C. thereby fulfill the requirements of 4141.4 as construed by respondent, notwithstanding that the individual program they are involved in—such as law—is not *specially* accredited by W.A.S.C. For example, UCLA and USC are accredited by W.A.S.C. (Education Directory, *supra,* p. 47); therefore a law student at either of those schools goes to a W.A.S.C. accredited university. This fact is not altered merely because the law school is not specially accredited by W.A.S.C., because, by its nature, W.A.S.C. accredits an entire institution, but gives no special accreditation to individual programs within the institution. Hence, a teacher within the district who attends UCLA or USC and takes courses thereby obtains units from a W.A.S.C. accredited institution, regardless of whether the courses are in engineering, education, art, or law.

Indeed, in California, 13 out of 15 law schools approved by the American Bar Association (hereinafter ABA) are part of W.A.S.C. accredited universities. (A.B.A., Law Schools and Bar Admission Requirements: A Review of Legal Education in the United States (Fall, 1976) p. 508; National Center for Educational Statistics, Education Directory: Colleges and Universities, 1976-1977 (Gov. Printing Office) pp. 17-51.) Only Southwestern and California Western School of Law (San Diego) are free standing schools which are not part of larger W.A.S.C. accredited institutions or separately W.A.S.C. accredited. On the other hand, Western State University (both Fullerton and San Diego) is *not* accredited by the ABA but *is* accredited by W.A.S.C. It follows that if regulation 4141.4 were construed as a flat requirement of W.A.S.C. accreditation, the vast majority of law school students attending ABA approved law schools would meet this requirement and some attending law schools not accredited by ABA would also meet the requirement. This result is directly contrary to the purported purpose of the regulation, and places the reasonableness of respondent's construction in grave doubt.

That respondent's construction of the regulation leads to an unreasonable result is also made evident by the fact that, as we have above indicated, W.A.S.C. does accredit free standing law schools that seek such accreditation. W.A.S.C. does not have as one of its predetermined criteria for approval a requirement that the institution *not* be a professional school. Although the Western State Colleges of Law at San Diego and Fullerton are accredited by W.A.S.C., they are not accredited by the ABA. (Education Directory: Colleges & Universities, *supra,* p. 50.) Thus, regulation 4141.4, as construed by respondent, would exclude petitioner from salary credit for courses taken at Southwestern—a free standing law school approved by the California State Committee of Bar Examiners and the ABA. On the other hand, respondent's construction would allow salary credit to a teacher who attended Western State College of Law at San Diego and Fullerton, because that school—though unaccredited by ABA—has sought and received W.A.S.C. accreditation.

In short, respondent's construction of regulation 4141.4 manifests little if any relationship between the chosen means and the purported purpose. Almost all of California's ABA approved law schools are components of W.A.S.C. accredited institutions and therefore enjoy the "umbrella" effect of W.A.S.C.'s institutional accreditation. Further, law schools which have not met ABA standards may nevertheless obtain W.A.S.C. accreditation; two freestanding schools (or one school with two branches) which have not met ABA requirements have sought and obtained W.A.S.C. approval. It is clear, therefore, that a regulation requiring that courses taken for salary credit be taken at W.A.S.C. accredited schools is not a reasonable means to prevent salary credit for courses taken at professional schools such as law schools.

We conclude that the regulation more reasonably construed is as a requirement that courses taken for salary credit must be from duly accredited institutions of higher learning, and that W.A.S.C. accreditation is not mandatory where the institution would by its nature seek a special type of equal or higher accreditation.

To support their interpretation of regulation 4141.4, respondents have submitted declarations by Board members and district employees. These declarations uniformly assert that the declarant Board members enacted 4141.4 with the intent of prohibiting salary credit for professional school course work.

■ The evidence submitted in support of the Board's purported intent in enacting regulation 4141.4 does not alter our conclusion that the Board interpretation of that regulation must be rejected. Respondent's interpretation of Board intent is not reasonably ascertainable from the terms of the regulation. Nor is there evidence that the Board communicated its otherwise undisclosed intent to the teachers at the time of promulgation of the regulation. This interpretation of Board intent is therefore not binding on this court. The regulation is part of an adhesive contract of employment; ambiguities must be therefore construed against those who are responsible for the ambiguity. For this court to adopt respondent's interpretation of 4141.4 based upon this evidence, and give the regulation an effect neither apparent under its terms nor communicated to the teachers when enacted, would be to allow the Board to exercise limitless discretion in the administration of salary schedules.[8]

We therefore conclude that the Board's denial of petitioner's salary credit for coursework taken at a fully accredited law school was founded upon an improper construction of Board regulation 4141.4; hence, that denial constituted a breach of petitioner's statutory right to uniform treatment in the administration of salary schedules. (Ed. Code, § 45028.) It should be noted, however, that we do not deny that the Board has a right to enact a rule which prohibits salary credit for professional school units. ■ ■■■ We hold only that the Board has not yet done so, and that in the absence of such a rule, petitioner is entitled to salary credit, payment of salary withheld as a result of the Board refusal to grant credit, and costs.[9]

---

[8]In *Shoban* v. *Board of Trustees, supra,* 276 Cal.App.2d 534, the court resolved an ambiguity in a salary regulation in favor of the school board and against the teachers. That case is clearly distinguishable because the construction urged there by the teachers was unreasonable. The salary regulation required credit to be given for postgraduate "units" of coursework but failed to specify whether the unit should be quarter or semester. The petitioners were teachers who contended that the regulation should be construed so as to give them the same quantum of credit for their quarter units as for semester units. Several board members testified that the word "units" was intended to mean semester units. A member of the teachers' salary committee testified that the committee so understood the rule. Further, it was shown that teachers with quarter hours had had those units converted into the semester unit equivalent for salary purposes. The court took note that "more class hours and study are required to earn semester units than quarter units" and that "a semester unit is the equivalent of one and one-half quarter units." (*Id.* at p. 542.) The court stated that petitioner's construction would unreasonably favor teachers possessing quarter units over those possessing semester units. It was therefore held that "units" meant "semester units." In the present case, the petitioner's construction of the salary regulation is reasonable; on the other hand, it is the board's construction that would lead to arbitrary and discriminatory results.

[9]Respondent's sole asserted basis for denying petitioner salary credit was petitioner's alleged failure to comply with the accreditation requirement set by regulation 4141.4.

The judgment is reversed and remanded with directions to determine damages and thereupon issue the peremptory writ.

Kaus, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied April 24, 1978, and respondents' petition for a hearing by the Supreme Court was denied May 25, 1978.

---

There has been no contention, for example, that law courses are not sufficiently related to the teaching of high school government and economics to merit salary credit. In the present case, such a contention would lack merit. A school board must adhere to its own rules and method of procedures. (*Frates* v. *Burnett, supra,* 9 Cal.App.3d 63, 71; *Hamilton* v. *Stockton Unified Sch. Dist., supra,* 245 Cal.App.2d 944, 950.) The record indicates that credit is routinely granted without Board evaluation of the nature of the coursework taken. Teachers receive credit for courses which bear little if any relationship to their teaching assignment. For example, the record indicates that one industrial arts teacher received salary credit for having taken "Bowling 439"; a teacher of business education received credit for a course in "Stimulants and Depressives"; another business education teacher for "Psychology of Dreams," "Human Sexuality" and "Gold Rush Country"; a third business education teacher for "Ten Days Down a Rabbit Hole" and "Italy in Celebration." "An Introduction to ESP" brought salary credit to one physical education teacher.

Petitioner teaches government, economics and American history. It is not reasonably disputable that the relationship between petitioner's teaching assignment and courses in law is at least as substantial as in the above mentioned examples. In any event, the Board has not required a review of the subject matter of courses in granting salary credit and cannot now repudiate its adopted procedure.