# Phoenix Accident & Sick Benefit Association *v.* Stiver.

[No. 6,138.    Filed May 15, 1908.    Rehearing denied October 15, 1908.    Transfer denied December 17, 1908.]

1. Appeal.—*Transcript.—Change of Venue.—Certificate.*—Where a transcript on appeal shows that the clerk of the court in which the cause originated certified merely the order-book entries of the cause and sent the original papers therewith to the county from which the appeal was taken, the filing of such transcript being shown by an order-book entry, such papers are properly in the record on appeal, where they are copied into the record following the respective entries of their being filed and where they are certified by the clerk of the court from which the appeal was taken. p. 638.

2. Pleading.—*Complaint.—Insurance.—Accident.*—A complaint by the beneficiary of an accident policy, which sets out the policy and alleges that insured was struck and wounded by another without provocation or warning, that from the wounds inflicted assured died, and that such death was not produced by any cause which would render the policy void, shows a death from "violent and accidental means." p. 638.

3. Words and Phrases.—*"Accident."—Insurance.*—"Accident," as used in accident policies, imports any event which takes place without the foresight or expectation of the person affected by the event. p. 639.

4. Pleading.—*Complaint.—Insurance.—Proofs of Death.—Waiver.*—A complaint by the beneficiary of an accident policy alleging that the beneficiary, within the ten days provided in the policy,

notified the defendant company's auditor, in writing, at the home office, of the death of assured and requested blanks for final proof of death, the policy stipulating that blanks therefor would be furnished upon request, and that defendant refused to supply such blanks, shows a waiver of the proofs of death. p. 642.

5. TRIAL.—*Interrogatories.—Verdict.—Conflict.*—Answers to interrogatories to the jury control the general verdict only when they are in irreconcilable conflict therewith. p. 643.

6. SAME.—*Interrogatories.—Insurance.—Accident.—Altercations.—Insanity.*—Where the answers to the interrogatories, in an action by the beneficiary upon an accident policy, show that decedent put an insane person off of certain premises, that the insane person, when in the highway told the decedent that he was ready for him, that decedent went into the highway, that a bystander called out "Don't strike him," but did not indicate whom she was addressing, and that decedent received his death wound in the highway, they are not in irreconcilable conflict with a verdict for the plaintiff. p. 644.

7. SAME.—*Interrogatories.—Submission of Request Therewith.—Failure to Except.*—A failure by defendant to object and except to the court's submission, to the jury, of its request with its interrogatories, waives any question thereon. p. 644.

From Randolph Circuit Court; *John W. Macy*, Judge.

Action by Eliza Stiver against the Phoenix Accident and Sick Benefit Association. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*James W. Brissey* and *John E. Ethell*, for appellant.
*W. A. Thompson* and *W. H. Thompson*, for appellee.

WATSON, J.—Appellee, beneficiary in an accident insurance policy issued to her husband, sued appellant to recover the amount of the policy due by reason of the accidental death of the insured. There was a trial by jury, resulting in a verdict for appellee, upon which judgment was rendered in the sum of $300.

The first and third paragraphs of the complaint were withdrawn after the evidence was in, and the case is before this court on the second paragraph alone.

The errors assigned and discussed in the briefs are (1) overruling the demurrer for want of facts to the second paragraph of the complaint; (2) overruling the motion for

judgment for appellant on the interrogatories and answers thereto, notwithstanding the general verdict; (3) overruling the motion for a new trial, for the reason that the trial court submitted to the jury appellee's request for answers along with the interrogatories.

The question has been raised as to whether the second paragraph of the complaint and the demurrer thereto are properly before this court for consideration. The contention is that since said paragraph, with the demurrer thereto, was not set out in the copy of the transcript from the Delaware Circuit Court, from which a change of venue was taken to the Randolph Circuit Court, no question is presented.

The clerk of the Delaware Circuit Court certified that said transcript contained "full, true, and complete copies of all the papers and entries in said cause." In the transcript to this court there is a proper order-book entry of the filing of the transcript from the Delaware Circuit Court and a copy of the same, except that the various papers are not set out in full therein. Immediately following is a copy of the complaint and the demurrers to the separate paragraphs thereof, certified to by the clerk of the Randolph Circuit Court as being "full, true and complete copies" of the original papers. The latter certification authenticates said proceedings to this court, and hence it is proper to consider said second paragraph. It may be said that no question is raised as to the correctness of the certified copy.

The complaint is attacked for failing to allege facts sufficient to show that the death of the insured was accidental, within the meaning of the terms of the policy. The complaint contains a complete copy of the policy. The terms of such policy and the allegations of the complaint material to this question are, in substance, as follows: Appellant insured Henry Stiver, husband of appellee, "against loss of time resulting from bodily injury caused solely and exclusively by external, violent and accidental

means, of which there are external and visible marks on the body." If death should result from such injuries alone, within three months from the date of any accident, the association was to pay $300 to Eliza, wife of the insured, if surviving. On August 15, 1904, Henry Stiver was cut and stabbed by Henry Lowenstein. The cutting and stabbing was without warning to the insured, and without provoca-. tion. It occurred on a public highway in Muncie, Delaware county, Indiana; while Stiver was walking from the home of John Langenback to his own home, and from the effects of which assault he died. When said accident occurred Stiver was engaged in no assault upon Lowenstein, nor in any affray, nor in committing any unlawful act. The assault was entirely without warning to the insured, wholly un-expected, unforeseen and accidental, and without the design or consent of decedent. Lowenstein was at the time insane, and his acts were unintentional. The complaint then specifically denies that the death of the insured was due to any of the causes which, by the terms of the policy, would render the same void.

A definition of death by accidental means, within the meaning of accident policies, has been clearly enunciated in the case of *Ripley* v. *Railway, etc., Assur. Co.* (1870), 3. Fed. Cas. No. 11,854; 2 Bigelow, L. and A. Ins. Cas., 738. The policy in the case just cited insured against death by accident while traveling by public or private conveyance. The insured was attacked and robbed while walking from a certain town, where he had disembarked from a steamboat, to his home. Death resulted from the injuries received in the attack. It is true that it was not necessary to the decision of the case to define the term "accidental death." In fact, the decision rested on the ground that the injuries were not received while traveling, as prescribed in the policy, but the doctrine there stated has been generally followed. The court said: "The injuries were effected by violence, but was there any accident? Mr. Webster defines

'accident' to be an event that takes place without one's fore-sight or expectation—an event which proceeds from un-known cause, or an unusual effect of a known cause, and therefore not expected; .chance, casualty, contingency, unex-pectedly happening by chance, unexpectedly taking place, not according to the usual course of things. Perhaps, in a strict sense, any event which is brought about by design of any person is not accident, because that which has accom-plished the intention and design, and is expected, is a fore-seen and foreknown result, and therefore not strictly acci-dent. Yet I am persuaded this contract should not be in-terpreted so as thus to limit its meaning, for the event took place unexpectedly, and without design on Ripley's part. It was to him a casualty, and in the more popular and com-mon acceptation of the word 'accident' if not in its precise meaning, includes any event which takes place without the foresight or expectation of the person acted upon or affected . by the event.   *   *   *   I think in construing a policy of insurance against accident, issued to all sorts of people, a ma-jority of whom do not, as the company well know, nicely weigh the meaning of words and terms used in it, courts are called upon to interpret the contract as a large class not versed in lexicology are sure to regard its terms and scope. That which occurs to them unexpectedly is by them called 'accident.' The company fixes the terms of the contract, and are to be held, in the absence of plain and unequivocal ex-ceptions and provisos, to intend what, in popular accepta-tion, the insured party is likely to understand by its terms.''

In the case of *American Accident Co., etc.,* v. *Carson* ·(1896), 99 Ky. 441, 36 S. W. 169, 59 Am. St. 473, 34 L. R. A. 301, Carson was shot by Burton intentionally, but without provocation on the part of Carson and unforeseen by him. It was alleged that the shooting was ''wanton, causeless, un-provoked, and unexpected'' by Carson. The question arose on a demurrer to the complaint. It is said in the syllabus: ·

"If, as to the person injured, the injury was unforeseen, unexpected, not brought about through his agency, designedly, or was without his foresight, or was a casualty or mishap not intended to befall him, then the occurrence is accidental, and the injury one inflicted by accidental means within the meaning of such policy."

The case of *Lovelace* v. *Travelers Protective Assn., etc.* (1894), 126 Mo. 104, 28 S. W. 877, 47 Am. St. 638, 30 L. R. A. 209, was very similar in its facts to the case at bar. In that case the insured, who was a guest at a hotel, was shot and killed while engaged in a fight caused by his trying to eject from the office of such hotel an unruly and boisterous person who was creating a disturbance. The guest was not requested or authorized by the proprietor of the hotel to eject the unruly one. The court held that the death of the insured was accidental within the meaning of the policy.

For further cases supporting the doctrine as to what constitutes accident, see, *Supreme Council, etc.,* v. *Garrigus* (1885), 104 Ind. 133, 54 Am. Rep. 298; *Warner* v. *United States, etc., Accident Assn.* (1893), 8 Utah 431, 32 Pac. 696; *Richards* v. *Travelers Ins. Co.* (1891), 89 Cal. 170, 26 Pac. 762, 23 Am. St. 455; *Accident Ins. Co., etc.,* v. *Bennett* (1891), 90 Tenn. 256, 16 S. W. 723, 25 Am. St. 685; *Hutchcraft's Executor* v. *Travelers Ins. Co.* (1888), 87 Ky. 300, 8 S. W. 570, 12 Am. St. 484; *Fidelity & Casualty Co.* v. *Johnson* (1894), 72 Miss. 333, 17 South. 2, 30 L. R. A. 206; *Railway Officials, etc., Assn.* v. *Drummond* (1898), 56 Neb. 235, 76 N. W. 562; 1 Am. and Eng. Ency. Law (2d ed.), 294, and notes.

The averments of the complaint allege an event clearly coming within the rule just stated. It is averred that the insured was stabbed by an insane person while he, the insured, was on a public highway, on his way from a neighbor's premises to his own home; that the stabbing, from which death resulted, was without provocation, and wholly

unexpected and unforeseen by the deceased. These facts are sufficient to withstand the demurrer.

The objection is also made that the complaint does not show that the alleged waiver by appellant of proof by appellee of the insured's death occurred within the time when, according to the terms of the policy, such proof should have been made.

The policy provides that notice of sickness, injury or death, for which a claim is to be made under such policy, shall be given in writing, to the auditor at the home office, Benton Harbor, Michigan, with full particulars. Failure to give such notice within ten days from the date of the injury invalidated all claims under the policy. Further, unless affirmative and final proofs, containing answers under oath to questions in blank furnished by the association, were sent to the association within two months from the date of the death of the insured, all claims based thereon should be forfeited.

The complaint alleges that within ten days after the death of the insured, on or before August 25, 1904, appellee gave to appellant's auditor at said home office notice and proof of such death; that, though requested to do so by appellee, appellant "wholly and absolutely failed" to furnish blanks for the required final proof. Appellant does not challenge the sufficiency of the notice given, nor contend that it was not given in time. By the terms of the policy final proof of the death of assured was required within two months after his death, but this duty depended upon a prior condition to be performed by appellant, namely, to furnish the proper blanks for such proof. Consequently, if appellant should see fit to refuse or neglect to supply such blanks within the stipulated time after receiving due notice and proof of the particulars of the death, it has waived the right to insist upon the final proof as a condition precedent to a right to recover on the policy. *Covenant Mut. Benefit Assn., etc.,*

v. *Spies* (1885), 114 Ill. 463, 2 N. E. 482; *National Masonic, etc., Assn.* v. *Seed* (1900), 95 Ill. App. 43; *Dial* v. *Valley Mut. Life Assn.*, etc. (1888), 29 S. C. 560, 8 S. E. 27; *Pray* v. *Life Indemnity, etc., Co.* (1897), 104 Iowa 114, 73 N. W. 485; *McClure* v. *Supreme Lodge, etc.* (1899), 41 Hun, App. Div., 131, 59 N. Y. Supp. 764; *Meagher* v. *Life Union* (1892), 65 Hun 354, 20 N. Y. Supp. 247; Kerr, Insurance, §205, p. 606; 4 Cooley, Briefs on Ins., 3516.

A fair construction of the averments of the complaint is that by failing to supply blanks for the proper verified final proof waiver was made from the time the notice of death was received. The allegations, therefore, were sufficient. *Railway, etc., Assn.* v. *Armstrong* (1899), 22 Ind. App. 406.

Appellant further insists that judgment should have been rendered for it upon the answers to interrogatories returned by the jury. The complete list of the interrogatories, with the answers thereto, has not been set out in the brief, but only such as are deemed sufficient to support this contention. They are, in substance, that just prior to the injury complained of decedent pushed Lowenstein from the premises of one Langenbach; that when in the highway Lowenstein said to decedent: "I am on the public road. Now I am ready for you. Come out now;" that decedent replied: "All right," and went out; that Mary Langenbach, at the time, said: "Don't strike him;" that decedent received his death wound while in the public highway, immediately upon leaving the Langenbach premises; that Lowenstein, at the time, was insane.

It is well settled in this State that the answers to the interrogatories will override the general verdict only when the two are so antagonistic that both cannot stand.

5. *Union Traction Co.* v. *Barnett* (1903), 31 Ind. App. 467; *American Tin-Plate Co.* v. *Williams* (1902), 30 Ind. App. 46; *Indianapolis St. R. Co.* v. *Walton* (1902), 29

Ind. App. 368; *Chicago, etc., R. Co.* v. *Leachman* (1903), 161 Ind. 512; *Wright* v. *Chicago, etc., R. Co.* (1903), 160 Ind. 583.

The answers do not show any such contradiction. They do not show that at the time of the injury decedent was committing an assault and battery upon Lowenstein.

6.   It is not shown whether the exclamation "don't strike him" was directed to Stiver or Lowenstein. Granting that Stiver did commit an assault and battery upon Lowenstein by ejecting him from the Langenbach premises, there is nothing to show that he expected, or had reason to expect, any serious result from the act. It is reasonable to presume that a fatal termination to the quarrel was entirely unforeseen by decedent.

In the case of *Lovelace* v. *Travelers Protective Assn., etc., supra,* the court said: "There is no proof that Graves [the one who killed Lovelace] exhibited a weapon, or made any remarks indicating a purpose to shoot, before the affray. The mere fact that Lovelace engaged in, or brought on, a fight in the manner described, did not, of itself, indicate that he sought death, or had reason to expect it as a consequence of his action."

The answers returned by the jury are not inconsistent with the general verdict, which must have rested upon the jury's finding that the death of Stiver was an accident within the meaning of the policy.

Finally, it is urged that there was reversible error by the trial court in that appellee's request for answers to interrogatories was submitted, probably inadvertently, to

7.   the jury along with the interrogatories. It has been decided that, unless an exception is reserved to such an act in the trial court, no question is presented for consideration on appeal. *M. S. Huey Co.* v. *Johnston* (1905), 164 Ind. 489. The record does not disclose that any exception was reserved thereto in the court below. Therefore it is not before us for consideration.

No reversible error by the trial court has been presented. Judgment affirmed.

Comstock, J., concurs in the conclusion.

Roby, C. J., absent.