NEW YORK LIFE INSURANCE COMPANY *v.* BRUNER.
[No. 19,000. Filed October 30, 1958. Rehearing denied November 24, 1958. Transfer denied February 24, 1959.]

*Jerry W. Torrance, Campbell, Gemmill, Browne, Ewer & Torrance,* of counsel, both of Marion, *John W. Houghton* and *Barnes, Hickam, Pantzer & Boyd,* of counsel, both of Indianapolis, for appellant.

*Brown & Shadle,* of Marion, and *Albert W. Ewbank,* of Indianapolis, for appellee.

PFAFF, C. J.—This appeal involves a double indemnity provision in certain insurance policies upon which this action was brought by appellee.

Each policy provides that double indemnity is pay-

able if, ". . . the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means . . ."

The material facts are not in dispute. The insured, in preparation for surgery for the removal of his appendix, was administered a spinal anesthetic containing novocain by means of a hypodermic needle. This involved the exertion of physical force externally against his back and into the cartilage of his spine. He had a peculiar idiosyncrasy or hypersusceptibility to this drug, which was not known to him or the surgeon, and was not discernible by any known test or examination. It is alleged in the amended complaint and admitted by answer that the insured voluntarily consented to the administration of the spinal anesthetic, which was properly administered in all respects. Due to his hypersusceptibility he suffered a reaction, resulting in his death within a few minutes and before surgery was commenced.

Both parties agree that the issue presented here may be stated as follows: "Where the insured voluntarily consents to the administration of a spinal anesthetic, and such spinal anesthetic is properly made and administered, and the insured dies as a result of the administration of the spinal anesthetic due to a hypersusceptibility of the insured to the anesthetic agent, is his death caused solely through external, violent and accidental means and independent of any infirmity of body or any illness or disease?"

Both parties agree that Indiana is among those states wherein a distinction is made between "accidental means" and an unexpected result from intentional means. *Pearlmen* v. *Mass. Bonding and Ins. Co.* (1956), 126 Ind. App. 294, 130 N. E.

2d 54, 131 N. E. 2d 362; *Husbands* v. *Indiana, etc., Accident Assn.* (1923), 194 Ind. 586, 133 N. E. 130; *Schmid* v. *Indiana, etc., Accident Assn.* (1908), 42 Ind. App. 483, 85 N. E. 1032; *Newman* v. *Railway Officials & Employees' Accident Association* (1895), 15 Ind. App. 29, 42 N. E. 650. The parties differ as to whether such distinction prevents recovery in this action.

Appellee argues, first, that the above-cited cases were all cases of accident insurance under health and accident policies and that none of them involved double indemnity features. However, the language of the insurance policies in those cases was not essentially different than the provision in the policies involved here. Further, in *Peoples Life Ins. Co.* v. *Menard* (1954), 124 Ind. App. 606, 117 N. E. 2d 376, in which the same distinction is stated, a double indemnity provision of life insurance policy was involved.

It was alleged in the complaint and admitted by answer that the insured voluntarily consented to the administration of the spinal anesthetic. Appellee now argues, without citation of authority, that decedent's consent wasn't really voluntary and without compulsion. Allegation of such fact made in the complaint and admitted by answer must be taken as true without further controversy. *Bearcreek Twp. of Jay County* v. *DeHoff* (1943), 113 Ind. App. 530, 49 N. E. 2d 391; *Rimer* v. *Stanz* (1951), 122 Ind. App. 178, 101 N. E. 2d 428; *Stack* v. *Commercial Towel, etc., Service* (1950), 120 Ind. App. 483, 91 N. E. 2d 790; *Lesh* v. *Johnston Furniture Co.* (1938), 214 Ind. 176, 13 N. E. 2d 708, 14 N. E. 2d 537; *The New Albany and Vincennes Plank Road Company* v. *Stallcup* (1878), 62 Ind. 345.

As stated by Judge Royse in *Pearlmen* v. *Mass.*

*Bonding and Ins. Co., supra,* wherein several decisions of this court and our Supreme Court are reviewed:

"While there is a sharp conflict in the decisions it seems clear to us the rule is well established in this state 'that where an unusual or unexpected injury occurs by reason of the doing by the insured of an intentional act, *where no mischance, slip or mishap occurs in the doing the act itself,* the ensuing injury is not caused by accidental means, but that it must appear that the means used were accidental and it is not enough that the result may be unusual, unexpected or unforseen.' . . . Our decisions assert this is the majority rule. But, as is frequently the case, our courts have had more difficulty in applying the rule than in stating it."

Appellee argues that this is a case of first impression in this state and cannot be decided upon the factual basis of any decided case. This is true in that no other case is based upon facts identical with those involved here. However, the legal principles involved, as we have noted, are well established.

Further argument is made based upon the dissenting opinion in *Prudential Ins. Co. of America* v. *Van Wey* (1945), 223 Ind. 198, 59 N. E. 2d 721, which appellee says correctly states the law. Inasmuch as this was not the view of the majority of that court, it is not a precedent binding on this court. Neither, assuming the correctness of the legal principles set forth in the dissent do we find such principles determinative here.

Argument is made based upon a statement contained in *United States Mutual Accident Association* v. *Barry* (1889), 131 U. S. 100, 33 L. Ed. 60. In that case a physician jumped from a walk or platform and was injured. The court said:

"The court properly instructed them that the jumping off the platform was the means by which

the injury, if any was sustained, was caused; that the question was, whether there was anything accidental, unforseen, involuntary, unexpected, in the act of jumping, from the time deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;' that if a result is such as follows from the ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means. . . ."

The argument is that in other jurisdictions where the majority rule is adopted, the *Barry* case is not relied upon, but that in Indiana, while the majority rule has been adopted, its application would be different because the definition of "accidental" in the *Barry* case was adopted in *Newman* v. *Railway Officials and Employees' Accident Association* (1895), 15 Ind. App. 29, 42 N. E. 650. In the latter case this court merely said that the Supreme Court of the United States "defined an accident as 'an event happening by chance; unexpectedly taking place; not according to the usual course of things, or not as expected.' " Several decisions from other jurisdictions are cited and relied upon by the parties here, and argument is made concerning whether these cases are based upon the majority or minority view. We do not deem it necessary to discuss these cases at length. We find nothing in the *Barry* case or in the fact that this court quoted from that case which controls our decision here.

Here the act of administering the anesthetic was performed voluntarily and exactly in the manner in-

tended, and with the insured's consent. No mischance, slip, or mishap occurred in doing this act. The means employed were intentional and not accidental. The fact that a result followed which was unusual, unexpected or unforseen is not sufficient to establish liability under the provisions of the policies in question.

We are supported in our conclusions herein by decisions from other jurisdictions which have adopted the majority rule. Thus, in *John Hancock Mutual Life Ins. Co. of Boston* v. *Plummer* (1942), 181 Md. 140, 28 A. 2d 856, it is stated:

> "Thus, in accordance with the weight of authority, we specifically hold that the death of an insured resulting from the proper use of an anesthetic while he is undergoing an operation is not covered by a policy insuring against death from bodily injuries caused solely by external, violent and accidental means." (Citing authorities.)

See also *Fletcher* v. *Security Life and Trust Co.* (1941), 220 N. C. 148, 16 S. E. 2d 687; *Otey* v. *John Hancock Mutual Life Ins. Co.* (1938), 120 W. Va. 434, 199 S. E. 596; *Hesse, Appellant* v. *Traveler's Ins. Co.* (1930), 299 Pa. 125, 149 Atl. 96; *Bernard* v. *Union Central Life Ins. Co.* (D. C., Mass. 1954), 117 F. Supp. 456.

Having reached this conclusion, it follows that the trial court erred in its decision and judgment. The material facts in this case are not in dispute. They appear either by admissions in the pleadings or by stipulation. The question is one of law only and a new trial is not required. §2-3234 Burns' 1946 Repl.; *Dept. of Treasury* v. *Estate of Dietzen* (1939), 215 Ind. 528, 21 N. E. 2d 137; *McConnell, Admx.* v. *Thomson, Tr.* (1937), 213 Ind. 16, 8 N. E. 2d 986, 11 N. E. 2d 183; *Flanagan, Wil-*

trout and Hamilton, *Indiana Trial and Appellate Practice*, §2792, Comment 3.

The judgment of the trial court is reversed and this cause remanded with instructions to the trial court to vacate its judgment and enter judgment not inconsistent with this opinion.

Crumpacker and Kelley, JJ., concur.

NOTE.—Reported in 153 N. E. 2d 616.