MARTHA SMITH FREEMAN *v.* COMMONWEALTH LIFE INS. CO. OF LOUISVILLE, KY.

[No. 1170A182. Filed June 30, 1971. Rehearing denied July 15, 1972. Transfer denied August 22, 1972.]

*John R. Dollens,* of Scottsburg, for appellant.

*Fox & Smith,* of Jeffersonville, for appellee.

WHITE, J.—E. Everett Smith was shot and killed by a pistol Wilgus Bowling had pulled from his pocket during a fight between the two in which Smith was the aggressor.[1] At the time he was shot Smith had Bowling down on the ground and was choking him with his hand or hands on Bowling's neck.

Smith's life was insured by the defendant-appellee, Commonwealth Life Insurance Company of Louisville, Kentucky, under a group policy issued to his employer, Louisville Cement Company, and a certificate of that coverage issued to Smith. It provided a death benefit of $7,000.00, which was paid, and an additional benefit of $7,000.00 for death by accidental means,[2] which was not paid. Smith's widow (since remarried), his named beneficiary, brought this action for the additional benefit. The defendant insurance company admitted all the allegations of the complaint except the allegation that Smith

1. This statement is not a finding of fact, but merely as a simplified factual introduction to the questions raised by the appeal. Appellant concedes only *arguendo* that Smith was the aggressor.

2. In pertinent part the accidental death clause reads: "If an Employee . . . suffers the loss of life . . . as a result . . . of bodily injuries effected solely through external, violent and accidental means . . . the Insurance Company will . . . pay the amount provided for such loss."

"suffered the loss of his life as a result directly and independently of all other causes, of bodily injuries effected solely through external, violent, and accidental means. . . ." In argument, however, the external and violent nature of the means of death is not disputed. The only issue, then, is whether the "means" was accidental, which is to say, whether the firing of the fatal shot was accidental.

The insurance company moved for summary judgment "on the grounds that the pleadings and depositions of Martha Smith Freeman and Wilgus Bowling . . . show that the defendant is entitled to judgment as a matter of law." The rationale of the brief appended to the motion is, in substance, that the "undisputed facts" bring the case within what is said to be the general rule in the United States: "[T]hat there will be no liability where the harm to the attacker-insured is such a probable and reasonably foreseeable consequence of his aggression that it would not be regarded by the ordinarily reasonable man as 'accidental'." The circuit court, in granting that motion, apparently agreed that the "reasonably foreseeable" rule is the law in Indiana and that it renders defendant "entitled to judgment as a matter of law."

Plaintiff's appeal is not premised on a contention that the "reasonably foreseeable" rule is not the law in Indiana. Her contention is that there is a genuine issue of material fact as to whether the pistol shot was a probable and reasonably foreseeable consequence of decedent's acts. We hold that plaintiff-appellant's position is well taken and that the judgment should be reversed. But we also hold that the rule of reasonable foreseeability is not the law and should not govern further proceedings on remand.

For Indiana this is a case of first impression in that no reported Indiana case is an action for accidental death benefits by the beneficiary of an alleged aggressor-insured killed in an encounter with his alleged victim.

Perhaps the Indiana cases which come closest in factual similarity are *The Supreme Council of Chosen Friends* v.

*Garrigus* (1885), 104 Ind. 133, 3 N. E. 818, and *Phoenix Accident & Sick Benefit Association* v. *Stiver* (1908), 42 Ind. App. 636, 84 N. E. 772, although neither involves an aggressor-insured.

The plaintiff-appellee in the *Supreme Council* case was a member of a fraternal society whose by-laws provided benefits for accidental injuries. The question decided was whether a demurrer should have been sustained to an answer alleging that appellee's injury was a pistol shot wound intentionally inflicted by an adversary in an affray. The court said:

> "The charge that appellee was engaged in an affray is moreover the statement of a conclusion, and is not sufficient to meet the averments in the complaint, that appellee received the wound without any agency, fault or negligence on his part. If the facts were stated instead of the conclusion, as the rules of pleading require, it might appear that the only part appellee took was in defence of his person against the assaults of his adversary or adversaries, and that thus, whatever injuries he received were received without any fault or wrong on his part. Nor will it do to say, that because the injury was intentionally inflicted by the assailant and wrongdoer, it was not an accident to appellee, within the meaning of the word 'accident,' as used in the relief fund laws, etc., of the order. To thus limit the word 'accident,' would be to thwart the manifest object of the order and deprive the members of the benefits they have a right to expect upon the payment of their dues and assessments. The word 'accident,' as used in those laws and in the relief fund certificates held by the members, should be given its ordinary and usual signification, as being an event that takes place without one's foresight or expectation. It will not do to say, that because a desperado waylays, assails and wounds a member intentionally, that wounding is not an accident to the member, within the laws, etc., of the order." (104 Ind. at 140.)

In the second case, *Phoenix Accident* v. *Stiver*, the insured was killed by stab-wound in an unprovoked attack by an insane man on the street. In holding that a demurrer to the complaint was properly overruled, we said:

> "A definition of death by accidental means, within the meaning of accident policies, has been clearly enunciated

in the case of *Ripley* v. *Railway, etc., Assur. Co.* (1870), Fed. Cas. No. 11,854; 2 Bigelow, L. and A. Ins. Cas., 738. . . . The insured was attacked and robbed while walking. . . . The court said: 'The injuries were effected by violence, but was there any accident? Mr. Webster defined "accident" to be an event that takes place without one's foresight or expectation—an event which proceeds from unknown cause, or an unusual effect of a known cause, and therefore not expected; chance, casualty, contingency, unexpectedly happening by chance, unexpectedly taking place, not according to the usual course of things. Perhaps, in a strict sense, any event which is brought about by design of any person is not accident, because that which has accomplished the intention and design, and is expected, is a foreseen and foreknown result, and therefore not strictly accident. Yet I am persuaded this contract should not be interpreted so as thus to limit its meaning, for the event took place unexpectedly, and without design on Ripley's part. It was to him a casualty, and in the more popular and common acceptation of the word "accident" if not in its precise meaning, includes any event which takes place without the foresight or expectation of the person acted upon or affected by the event. * * * I think in construing a policy of insurance against accident, issued to all sorts of people, a majority of whom do not, as the company well know, nicely weigh the meaning of words and terms used in it, courts are called upon to interpret the contract as a large class not versed in lexicology are sure to regard its terms and scope. That which occurs to them unexpectedly is by them called "accident." The company fixes the terms of the contract, and are to be held, in the absence of plain and unequivocal exceptions and provisos, to intend what, in popular acceptation, the insured party is likely to understand by its terms.'

"In the case of *American Accident Co., etc.* v. *Carson* (1896), 99 Ky. 441, 36 S.W. 169, 59 Am.St. 473, 34 L.R.A. 301, Carson was shot by Burton intentionally, but without provocation. . . . It is said in the syllabus: 'If, as to the person injured, the injury was unforeseen, unexpected, not brought about through his agency, designedly, or was without his foresight, or was a casualty or mishap not intended to befall him, then the occurrence is accidental, and the injury one inflicted by accidental means within the meaning of such policy.' " (42 Ind. App. at 639.)

The significance of those quotations, so far as the case at bar is concerned, is that the nature of the incident, whether

it is accidental or voluntary, is to be determined from the viewpoint of the injured party, and that what constitutes an "accident," or what "means" are "accidental," is to be determined by what people usually and ordinarily consider to be "accidental." Furthermore, and perhaps most important, when foresight and expectation are spoken of it is not the foresight and expectation of a reasonably prudent person, nor even what the person injured should reasonably have foreseen. Rather, it is *"as to the person injured,"* that the foresight and expectation are applied.

Yet those cases suggest, though they do not hold, that the old common law tort concept of an accident as an event which occurs without human fault[3] contributing thereto (perhaps even remotely) is what is meant by "accidental means" in a contract which provides an indemnity for injury or death by accidental means. We do not believe that is the law in Indiana. The recent decisions condemning the "pure accident" and "mere accident" jury instructions in negligence cases clearly demonstrate, that the old common law concept is not the ordinary and usual concept of "accident."[4] To the non-lawyer an event is an accident no matter how much the injured party's fault may have contributed to causing it, so long as he did not intend for it to happen. As the Indiana Supreme Court said in *Miller* v. *Alvey* (1965), 246 Ind. 560, 565, 207 N. E. 2d 633, 636:

> "What is the meaning of the term 'accident'? Webster's Third New International Dictionary (p. 11), defines it *inter alia* as 'a usually sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result (a traffic accident in which several persons were injured).' It is thus readily apparent that *the word 'accident' does not necessarily preclude fault or negligence.* The term is susceptible of different meanings

3. *Robinson* v. *Kansas City Public Service Company*, 345 Mo. 764, 137 S. W. 2d 548 (1939).

4. *Miller* v. *Alvey* (1965), 246 Ind. 560, 207 N. E. 2d 633; *White* v. *Evansville American Legion Home Association* (1965), 247 Ind. 69, 210 N. E. 2d 845.

and constructions and to tell a jury there is no liability in case of 'unavoidable accident', i.e., an unintentional, careless, or unknown occurrence, is misleading and confusing to say the least. . . .' " (Our emphasis.)

That statement by our Supreme Court was made in a case which had nothing to do with the interpretation of any contract. It was probably not contemplated that it would ever be quoted in a case of this kind, yet the conclusion is inescapable that the Supreme Court in 1965 recognized that "accident" and thus necessarily the adjective "accidental" are ambiguous words which are often used to describe events caused by negligence and fault.

It has always been the law in Indiana that ambiguities in contracts of adhesion,[5] especially insurance contracts, are resolved against the drafter.[6] The Arizona Supreme Court applied that principle to cases of the kind now before us in the following words:

"Insurance companies are the drafters of the policies they sell and if they want to exclude against reckless and foolhardy acts, such as driving at high rates of speed on an unfamiliar mountain road, *Scott* v. *New Empire Ins. Co.* (1965), 75 N. M. 81, 400 P. 2d 953; or self-administering an overdoes of narcotics, *Beckham* v. *Travelers Ins. Co.* (1967), 424 Pa. 107, 225 A.2d 532; or placing a gun to one's chest and pulling the trigger three times just to frighten one's friends, *Gulf Life Ins. Co.* v. *Nash*, 97 So. 2d 4 (Fla. 1957); or attempting a swan dive from perilous

---

5. A "contract of adhesion" is a standardized contract imposed and drafted by party of superior bargaining strength who relegates to subscribing party only opportunity to adhere to contract or reject it. *Neal* v. *State Farm Ins. Companies*, 10 Cal. Rptr. 781, 784, 188 C. A. 2d 690. See also *Hamilton* v. *Stockton Unified School Dist.*, 54 Cal. Rptr. 463, 467, 245 C. A. 2d 944; *Walnut Creek Pipe Distributors, Inc.*, v. *Gates Rubber Co., Sales Division*, 39 Cal. Rptr. 767, 771, 228 C. A. 2d 810.

6. ". . . [W]here two interpretations equally fair may be made from the provisions of the policy that interpretation supporting indemnity will be adopted." *Richmond Insurance Company of New York* v. *Boetticher* (1938), 105 Ind. App. 558, 562, 12 N. E. 2d 1005, 1007. "The company fixes the terms of the contract, and are to be held, in the absence of plain and unequivocal exceptions and provisos, to intend what, in popular acceptation, the insured party is likely to understand by its terms." Quoted *ante*, p. 215, from *Phoenix Accident and Sick Benefit Association* v. *Stiver* (1908), 42 Ind. App. 636, 639, 84 N. E. 772.

heights they have it in their power to make such exclusions. With simplicity and clarity of expression they may remove all doubt, *Murphy* v. *Travelers Ins. Co.*, 141 Neb. 41, 2 N.W. 2d 576. On the other hand *ambiguous and uncertain terms like 'accidental means' should be construed in favor of the insured."* (Our emphasis.) *Knight* v. *Metropolitan Life Insurance Company, Inc.* (1968), 103 Ariz. 100, 437 P. 2d 416, 420.

In *Harvey* v. *The St. Paul Western Insurance Companies, Inc.* (Fla. App. 1964), 166 So. 2d 822, 823, the insurance contract was almost identical to decedent Smith's coverage and the manner of death of the insured, an alleged aggressor, was quite similar. The Florida Court of Appeals said:

"The appellee contends that we should apply the 'reasonably foreseeable' rule to the particular facts in the case at bar. As we previously stated, the deceased, Foster, was the aggressor in an altercation with Robert Little. Little possessed a firearm. Foster accosted Little and knocked him to the ground. While Little was lying on the ground, he brandished the pistol which he possessed and warned Foster to leave him alone. A scuffle ensued between the two men for possession of the firearm and it went off fatally wounding Foster.

"Without going into a discussion of the reasonably foreseeable rule, sufficice it to say that the Supreme Court of this state in *Gulf Life Insurance Company* v. *Nash* [97 So. 2d 4], *supra,* has rejected that rule and in so doing, said:

'It seems to me that such doctrine of foreseeability is a doctrine totally unsuited and unadaptable in construing accident policies. Moreover, the rationale of these cases seems to be founded not only in the doctrine of foreseeability but intrinsically in negligence on the part of the insured. Were we to make this principle a part of the law of this State, it would not only do violence to the reason for buying accident insurance but if it did not preclude recovery in a great majority of deaths arising from accidents, it would place an almost insurmountable burden on the insured to enforce liability.'

"The Gulf Life case involved a death resulting from a gun shot wound sustained by Nash who was attempting to play 'Russian Roulette' in the presence of a number of persons at a gathering. We fail to see wherein the facts in this case

would create such a difference as to require the application of a different rule of law."[7]

7. Since the *Gulf Life* case is a "Russian Roulette" case the fatal pistol shot in that case was fired by the insured decedent himself. He himself intentionally pulled the trigger, thus the "means" was "intentional"—not "accidental". Hence it was necessary in that case for the Texas Supreme Court to discuss the distinction between accidental death and death by accidental means before it could reach the issue of whether to follow the doctrine of reasonable foreseeability. The opinion by Mr. Justice Thomas would have decided the case without ever reaching the issue of reasonable foreseeability. He would have held that benefits for death by accidental means were not recoverable because the means, the pulling of the trigger by the deceased, was voluntary. To reach the issue of foreseeability the majority opinion by Mr. Justice Drew rejects the distinction between "accident" and "accidental means", holding the terms are legally synonymous. Justice Drew's opinion then proceeds to discuss and reject the doctrine of foreseeability. It is only this latter discussion that the Court of Appeals quotes in *Harvey* v. *St. Paul, etc.*, which we quote and rely on here. *Harvey* quoted only the foreseeability part of the opinion because in *Harvey*, as in the case at bar, the "means", the firing of the pistol, was not an act of the insured. (Our Supreme Court has repeatedly held that in insurance clauses of this wording "means" relates to proximate and not remote causes. *Cont. Cas. Co.* v. *Lloyd* (1905), 165 Ind. 52, 59, 73 N. E. 824; *Carter* v. *Aetna Life Ins. Co.* (1940), 217 Ind. 282, 291, 27 N. E. 2d 75; Note, 36 Ind. L. J. 376, 378.) In such cases the means and the result are both accidental or are both non-accidental. The result cannot be accidental without the means being also accidental. The only question in such cases is whether the means was accidental. Any distinction between means and result is wholly immaterial.

We belabor this distinction between Russian Roulette type cases and the case at bar to make it clear that our rejection of "foreseeability" is not an overruling of either *Pearlmen* v. *Massachusetts Bonding and Insurance Company* (1955), 126 Ind. App. 294, 297, 130 N. E. 2d 54, nor of *New York Life Insurance Company* v. *Bruner* (1958), 129 Ind. App. 271, 273, 153 N. E. 2d 616 (wherein insured consented to a fatal spinal anesthetic) nor to any of the many cases discussed in *Pearlmen*, some of them Indiana Supreme Court cases. We are prompted to stress this point because so many of the modern cases which are joining the trend to a realistic interpretation of what an accident is and have thus rejected "foreseeability" are also cases which have rejected the "means" distinction. A casual reading of such cases may lead one to the conclusion that rejection of "foreseeability" is also a rejection of the "means" distinction. The facts in those cases, however, usually fit the Russian Roulette mold. See *Beckham* v. *Travelers, etc.* (1967), 424 Pa. 107, 225 A. 2d 532 (self-administered overdose of narcotics); *Knight* v. *Metropolitan Life, etc.* (1968), 103 Ariz. 100, 437 P. 2d 416 (fatal dive from a high dam); *Scott* v. *New Empire Insurance Company* (1965), 75 N. M. 81, 400 P. 2d 953.

It should also be recognized that Indiana's rule for distinguishing between accidental result and accidental means is a modification of the general rule and has probably permitted many injuries to be held to be the result of accidental means when in other jurisdictions they would not be. Indiana stresses proximity of cause by adding to the rule the condition, "where no mischance, slip or mishap occurs in the doing of the [intentional] act [which produces the resulting injury]." (129 Ind.

In *Knight* v. *Metropolitan Life Insurance Company, Inc.* (1968), 103 Ariz. 100, 437 P. 2d 416, the insured decedent died as the result of a foolhardy dive from Coolidge Dam in Arizona. The trial judge denied recovery of insurance benefits for death by accidental means on the basis of the conclusion that:

> "The deceased as a reasonable man under the circumstances should have anticipated that death or serious bodily injury would result as the natural and probable consequence of his own voluntary act. Such is not accidental." (437 P.2d at 417).

In reversing that decision the Arizona Supreme Court said:

> "One paying the premium for a policy which insures against 'death by accidental means' intends to provide benefits to his family or named beneficiary in the event he should suffer death *caused by accident* as opposed to death caused by other means, such as suicide, murder, disease or natural death. He intends to insure against the fortuitous, the unintentional, and the unexpected, that which happens through mishap, mischance or misjudgment. When he pays that premium month after month he does not intend that any act committed by him, no matter how daring, reckless or foolhardy, be adjudged by a court under 'reasonable man tests' or 'natural and probable consequence' standards to deprive his beneficiary of contractual rights arising out of his unintended and unexpected and, therefore, accidental death.
>
> "The term 'accidental means' as used in this policy should not be construed in a technical sense but should be given its ordinary and popular meaning according to common speech and usage and the understanding of the average man, Anno. 166 A.L.R. 474. Insurance policies upon which the public relies for security in case of accident should be free from fine distinctions which few can understand until pointed out by lawyers and judges, *Burr* v. *Commercial Travelers Mutual Accident Asso.* (1946), 295 N.Y. 294, 67 N.E. 2d 248, 166 A.L.R. 462." (Id. at 420.)

App. at 271.) Had that condition been a part of the Arizona rule in *Knight* v. *Metropolitan, supra,* (the high dive case), there would have been no need for a rejection of the rule since in making the dive "he suffered the mishap of rolling over on his back just before he hit the water." (437 P. 2d at 421.)

\* \* \*

"Jackie E. Knight attempted a very daring dive. That a reasonable man might consider his voluntary stunt foolhardy does not of itself make the result any less accidental." (Id. at 421.)

In his concurring opinion in *Beckham* v. *Travelers Insurance Company* (1967), 424 Pa. 107, 225 A. 2d 532, 537, Mr. Justice Musmanno, said:

"The person who drives his automobile at 100 miles per hour on a congested highway is, in metamorphical language, 'committing suicide,' but if he is killed it does not legally or logically follow that he actually intended to take his life. Many if not perhaps most, fatalities of a violent character, (where crime is not involved) are due to poor reasoning, neglectful conduct, or a reckless attitude on the part of the deceased. An insomniac takes too many sleeping pills because he yearns to erase with a weary arm the slate of exhaustion, pain or sorrow; the swimmer dives into a shallow pool, seeking the exhilaration of cooling waters to drown the fatigue of a tired and weary body; a pedestrian runs across the street in front of a speeding car because he sees on the other side of the thoroughfare a dear friend whose companionship will be medicine to his loneliness and despair. Where death results in such cases the result is accidental even though the deceased voluntarily rode the thunderbolt which killed him.

"Andrew Beckham took an overdose of narcotics. \* \* \*

"The Travelers Insurance Company, in their brief, admit that 'It is conceivable that Andrew Beckham intended to take the overdose for a stronger reaction, effect or "kick" hoping it would not kill him.' With that concession it was for the jury to decide whether Beckham's death was accidental or intentional.
\* \* \*

"Andrew Beckham wanted to live, if only to dive again into the shallow pool of artificial exhilaration, if only to cross the street to embrace the morphine sweetheart of heart's ease. He used bad judgment, he was reckless, he did not want to bring bereavment and sadness to his mother, and it is comforting to know that she will not be denied the money he provided to help her along the remainder of her lonely journey when he, even through his own negligence, involuntarily left her."

The decisions we have cited and quoted may still represent the viewpoint of a minority of the courts which have spoken on the question, but we believe they represent a modern trend toward realistic construction of contracts of adhesion by resolving ambiguities in favor of the buying public.[8] But regardless of what may prove to be the judicial popularity of those opinions, they have persuaded us. On the basis of their reasoning we hold that "reasonable foreseeability" is not a proper test for determining whether the means by which an injury or death is caused is "accidental."

We hold that whether the shooting of Smith was accidental, which is to say, whether the *means* by which he was killed was accidental, is not to be determined in terms of whether it was reasonably foreseeable to Smith, but in terms of whether it occurred with his intent or volition; whether it was an event which he actually expected or anticipated as the result of the violence he was then inflicting on Bowling; not whether a reasonable man in his situation would have been aware of a high degree of probability of such an occurrence, nor even whether he himself *should* have expected it. Only if he actually did expect it and persisted in his aggression in the face of that expectation, could it be said that his being shot in that fight was intentional or volitional. Anything less is accidental no matter how careless, negligent, reckless, or heedless may have been Smith's conduct in continuing his violence on Bowling.

Intention, volition, and other subjective states of mind can be, and usually are, proved by circumstantial evidence. *National City Lines, Inc.* v. *Hurst* (1969), 145 Ind. App. 278, 283, 250 N. E. 2d 507, 510, 18 Ind. Dec. 420, 424. It seems readily apparent, however, that *even if* the circumstances disclosed by the depositions are susceptible of the inference that Smith intended that Bowling shoot him, that is certainly not the only inference which reasonably can be drawn from those circumstances. Therefore, the judgment must be reversed. Which

8. Less than two decades ago there was probably no minority at all. Anno. 26 A. L. R. 2d 399.

leads to the question, should we specifically mandate future proceedings on remand? Should the trial court be directed to enter summary judgment for the plaintiff?[9] Should the case be tried? Are there other alternatives?

Up to this point this case has been litigated on the assumption that whether the insured suffered death by accidental means was to be determined under a rule of reasonable foreseeability. The adversary process has had no opportunity to operate under the rule we have here laid down. Our American commitment to a judicial system based on professional advocacy and the adversary process requires that a reasonable opportunity be afforded the parties to shape the future course of litigation in this case by that process, subject to the circuit judge's supervisory judicial discretion. Accordingly the judgment is reversed and the cause remanded to the circuit court for further proceedings not inconsistent with the views here expressed.

Reversed and remanded.

Hoffman, C.J., and Staton, J., concur; Sharp, J., not participating.

NOTE.—Reported in 271 N. E. 2d 177.

9. Rule TR 56 (B) provides: "When any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party."