COMMONWEALTH LIFE INSURANCE CO. v. WILMA J. SULLIVAN.

[No. 1230A260. Filed December 30, 1971. Rehearing denied February 2, 1972. Transfer denied August 25, 1972.]

*Robert A. Kelso,* of New Albany, *Ogden, Robertson & Marshall,* of Louisville, Kentucky, for appellant.

*Owen Voigt, Samuel K. Gwin,* of Jeffersonville, for appellee.

STATON, J.—Commonwealth Life Insurance Company is appealing a jury verdict which found for the beneficiary under the policy clause providing for additional payment where death occurred by accidental means.

Appellee, Wilma J. Sullivan, was a beneficiary under an insurance policy owned by her former husband who was killed in a fight. The appellant, Commonwealth Life Insurance Company, paid the face value of the policy but refused to pay the additional indemnity which is payable only when the

death of the insured is by accidental means. The policy also provides that the additional indemnity shall not be payable if death occurs as a result of committing, or attempting to commit an assault. The jury rendered a verdict for Wilma J. Sullivan, and the court entered the following judgment:

> "It is therefore considered, ordered, adjudged and decreed by the Court that the plaintiff recover from the defendant the sum of $10,000.00 with interest at the rate of 6% per annum from the 30th day of October, 1968, totaling $925.00, making a total judgment in the amount of $10,925 plus taxable court costs."

The insurance company filed its motion to correct errors, setting forth these two contentions for consideration by this court:

> "1. This argument is basically that the death of the insured occurred as a result of the natural and probable consequences of his own voluntary acts, and that therefore, his death did not occur as a result of "accidental means".
> 2. This argument is basically that the death of the insured occurred as a result of committing, or attempting to commit, an assault, and such an assault as would justify the person assaulted in taking the insured's life."

There was no decision in Indiana setting forth an appropriate test of "accidental means" when this cause was tried on May 11, 1970.[1] This court will be guided by the agreement of counsels, that the proper test is set forth in Defendant's Instruction Number Two (2). This Instruction sets forth two tests which are interlocking. They are:

1. "The deceased must have entered into an affray voluntarily; *and*
2. "If Sullivan voluntarily and intentionally did a thing from which, as a reasonable man, *he could or should have foreseen that his own death might have resulted,* then his death is not a result of "accidental means"

---

1. This Court handed down an opinion on June 30, 1971, in which the test for "accidental means" used by the parties in this case was rejected. See *Freeman* v. *Commonwealth Life Ins. Co.* (1971), 149 Ind. App. 211, [26 Ind. Dec. 231], 271 N. E. 2d 177.

within the provisions of the insurance policy." (Our emphasis.)

The trial court's ruling on the motions for judgment on the evidence,[2] the jury's verdict and the judgment of the court were all against the insurance company. The burden is upon the insurance company to show this court that the evidence does not support the jury's verdict.

"In reviewing the record before us we may consider only the evidence most favorable to appellees, together with any reasonable inferences which may be drawn therefrom, and it is only when there is no conflict in the evidence and it can lead only to a conclusion contrary to the one which the trial court reached, will the decision be reversed." *National Bank & Trust Co.* v. *Moody Ford, Inc.* (1971), 149 Ind. App. 479, [27 Ind. Dec. 152, 155], 273 N. E. 2d 757. Court citing *Echterling* v. *Jack Gray Transp. Inc.* (1971), 148 Ind. App. 415, 267 N. E. 2d 198, at 201, 24 Ind. Dec. 682; *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669.

Robert Sullivan married Wilma Sullivan in 1947. They lived together for approximately twenty (20) years and had four (4) children. A divorce came on January 28, 1966, when Robert Sullivan could not control his drinking problem. He was a small, slight built man weighing only one hundred forty five (145) pounds and was five feet seven inches (5' 7") tall. On October 29, 1968, he had planned to meet Fairy Ellen Jackson after work in the parking lot at the Imco Container Company in Jeffersonville, Indiana. Both he and Fairy Ellen Jackson worked on the night shift and were off work at 11:20 P.M. and 11:40 P.M., respectively. Robert Sullivan had planned to have a tire repaired and return to the parking lot shortly after Fairy Ellen Jackson "clocked out." She planned to meet briefly Jesse Lee Vibbert, a large

---

2. See TR. 50(A)(1)-(6)—The standard which guides the trial court when ruling upon the motion. (Can be found in 3 Ind. Prac.—Rules of Civ. Proc., Harvey at 370.) This guide or test is also applied by our Court when reviewing the trial court's rulings on motions for Judgment on the Evidence.

muscular man, who was paying support to her for two minor children. She and Jesse Lee Vibbert had never been married. She got into Jesse Vibbert's car and after a heated discussion, Jesse Lee Vibbert became angry and placed a knife at her throat. When Robert Sullivan drove into the parking lot and parked, Jesse Lee Vibbert drove his car over near Sullivan's car and parked. The insurance company in its brief set forth the following sequence of what happened next:

"Jesse Vibbert gets out of his car.
The parking lot is well lit.
Vibbert has a knife in his hand.
Vibbert goes around the front of Robert Sullivan's car.
Vibbert stands outside of Sullivan's car.
Vibbert has a knife in his hand.
Vibbert says: "get out of the car, I am going to kill you."
Sullivan gets out of the car.
Sullivan says: "what for."
Sullivan swings at Jesse with a piece of pipe.
Vibbert took it away from Sullivan.
Vibbert threw the pipe away.
Vibbert started coming toward Sullivan.
Sullivan was walking backwards.
Sullivan says: "stay back or I am going to shoot."
Sullivan shoots the gun.
Sullivan had his arm down towards the ground.
Vibbert kept coming after him with a knife.
Sullivan shoots more shots.
Sullivan either fell or Jesse knocked him down.
Vibbert is on top of Sullivan stabbing him with a knife.
Vibbert stabs Sullivan more than once.
Sullivan shot Jesse five times.
Sullivan dies as a result of his wounds.
Vibbert does not die as a result of his wounds."

The sequence above is not altogether free from other conflicting testimony. For example, Dr. Gordon Gutmann testified

that Sullivan's skull was badly fractured and depressed into the brain. It was this injury that killed Sullivan. Therefore, Sullivan did not die as a result of stab wounds. There is testimony from the only eye witness, Fairy Ellen Jackson, which raised the reasonable inference that there was not any standing around outside Sullivan's car. Her testimony was that the entire sequence of events moved rather rapidly. There was a reasonable inference that physical violence occurrd suddenly and immediately upon the meeting of the two men.

Fairy Ellen Jackson's testimony indicates Jesse Vibbert's actions were angry and "fast." He had been holding a knife at her throat. When he got out of the car, he had a knife in his hand. Vibbert said to Sullivan, "Get out, I am going to kill you." The jury could have reasonably inferred and found that Jesse Vibbert intended to stab Robert Sullivan at the first opportunity. Her testimony in part, is as follows:

"A. He just backed it up real fast and drove over there real fast.

Q. Was he angry at this time, was Jesse angry at this time?

A. Yes, he was angry.

Q. Now when Mr. Jesse Vibbert got out of his automobile and went over to Mr. Robert Sullivan did he say anything to him?

A. He said get out, I am going to kill you.

Q. Now did he have a knife at this point, Mr. Vibbert have a knife at this point?

A. Yes.

Q. Where did he have it?

A. In his hand."

Jesse Vibbert testified that he did not have a knife in his hand when he walked around Sullivan's parked automobile. He further testified that he did not declare that he was going to kill Sullivan but that Sullivan came out of the "car with a piece of iron pipe." The testimony is conflicting. The jury may not have chosen to believe the testimony of Jesse Vib-

bert. He had been convicted on ten occasions of various offenses: assault and battery, child desertion and resisting arrest. There was sufficient evidence from which the jury could have reasonably inferred that Jesse Vibbert was on October 29, 1968 of an angry, violent disposition as he approached Sullivan's automobile and that Sullivan did not voluntarily enter into combat. His testimony was conflicting.

There were blood stains on the back seat of Sullivan's automobile. The jury could have reasonably inferred that he reached back into his automobile after being stabbed to get the iron pipe which was quickly taken away from him by Vibbert.

Sullivan retreated from Vibbert a distance of 106 feet where he was found with the .22 caliber pistol under his body. The knife was found under the hood of Vibbert's automobile after he had driven his automobile to the hospital to obtain treatment for his gun-shot wounds.

The jury could have found from the conflicting testimony and the evidence presented to them that Robert Sullivan was trying to escape from Jesse Lee Vibbert from the very moment he got out of his automobile and continued his attempt to escape until the time of his death.

The judgment should be and the same hereby is affirmed.

Hoffman, C. J., Sharp and Staton, JJ., concur.

NOTE.—Reported in 277 N. E. 2d 53.